## TRAVIS GENTRY v. STATE.

### No. 2067.  Decided December 15, 1912.

### Rehearing Denied January 15, 1913.

#### 1.—Murder—Special Venire—Dismissal.

Where defendant was indicted for murder in the first degree and the district attorney anounced that he would dismiss as to murder in the first degree, he thereby did not dismiss the prosecution for any lower degree of the offense, and a special venire was not necessary to be drawn in the case.

#### 2.—Same—Statutes Construed.

See opinion for construction of Articles 37, 752 and 630 of the Code of Criminal Procedure, and Article 9 of the Penal Code with reference to the degree of offenses, the authority of the state's attorney to dismiss, and the construction of the penal laws.

#### 3.—Same—Jury and Jury Law—Talesmen.

Where, upon trial of murder, it appeared that some of the jurors who had been drawn by the jury commissioners were either excused or disqualified so that there was not a sufficient number of the regular drawn venire present, there was no error in the court's order to the sheriff to summon talesmen to fill the panel.

#### 4.—Same—Evidence—Res Gestae—Defendant's Declarations.

Upon trial for murder, there was no error in admitting testimony as to the statements of the defendant a few hours after the killing that he had stabbed the deceased, showing the knife with which he had done it and that he had intended to stab his paramour, but that the deceased stepped in the way and received the thrust of defendant's knife; the record showing that the difficulty arose about defendant's said mistress.

#### 5.—Same—Charge of Court—Limiting Testimony.

Where the court properly limited the testimony for the purpose of impeaching the witness, there was no error in the court's failure to submit a special charge on the same issue.

#### 6.—Same—Sufficiency of the Evidence.

Where, upon trial of murder, defendant was convicted of murder in the second degree which was sustained by the evidence, there was no error.

Appeal from the District Court of Milam.  Tried below before the Hon. J. C. Scott.

Appeal from a conviction of murder in the second degree; penalty, five years imprisonment in the penitentiary.

The State's testimony showed that the defendant stabbed deceased with a knife, killing him, and indicated that the difficulty arose from the fact that deceased was found in company with defendant's mistress; that the killing occurred at a negro festival and was witnessed by several parties and occurred at night.

The defense's testimony showed that the deceased first struck or struck at the defendant having something in his hand.  It was also shown that the knife was a pocket-knife with a two or three-inch blade, and deceased was seen with a pocket-knife in his hand, etc.

*R. Lyles,* for appellant.—On question of dismissal of higher degree of the offense: Calvin v. State, 25 Texas, 789; Bell v. State, 58 S. W.

Rep., 71; Wenz v. State, 1 Texas Crip. App., 36; Hill v. State, 41 Texas, 253; Rothschild v. State, 7 Texas Crim. App., 519; Wollen v. State, 68 Tex. Crim. Rep., decided November 13, 1912

*C. E. Lane*, Assistant Attorney-General, for the State.

HARPER, Judge.—Appellant was indicted by the grand jury of Milam County, the indictment alleging murder in the first degree. On the first day of the term, when this case was called, the district attorney announced to the court that it was not necessary to order a special venire, as he would not seek to convict the defendant of any higher degree of offense than murder in the second degree. Defendant, by his counsel, announced that as defendant was indicted for murder in the first degree, he demanded that a special venire be ordered, filing a request to that effect. The court refused to order a venire, and set the cause for trial during the third week of that term of court. When the case was called for trial, the State announced ready, the defendant refusing to announce, stating as his reason that he was by indictment charged with murder in the first degree; was entitled to select a jury from a special venire, and as no special venire had been ordered, although requested by him, he should not be required to go to trial. The State's attorney then filed a written statement alleging that the evidence in the case in his opinion was insufficient to warrant a conviction for murder in the first degree, and requested that defendant be placed on trial for murder in the second degree only. In the plea filed the district attorney used the language "that the degree of homicide be reduced from murder in the first degree to murder in the second degree, and that the charge of murder in the first degree be dismissed, and that defendant be placed on trial for murder in the second degree only." The court entered up an order sustaining this plea of the district attorney, and announced to defendant he would be placed on trial for murder in the second degree. When the court announced he had sustained the request of the prosecution, the defendant filed a plea asking that he be discharged, on the ground that as the grand jury in the indictment presented against him charged him with murder in the first degree, the court had no authority to "reduce the degree of murder contained in the indictment"; that this in effect was finding a new indictment against him, and there was no authority under the Constitution and laws of this State for any person or tribunal to present an indictment against any one other than a duly constituted grand jury; that when the district attorney announced he would dismiss as to murder in the first degree, this in effect was a dismissal of the entire prosecution. In announcing that he would dismiss as to murder in the first degree, the district attorney did not dismiss the prosecution, but his acts were a mere abandonment of the prosecution as to murder in the first degree under this indictment.

Upon the submission of this case appellant's counsel made an able oral argument, and as the decision of the latter proposition necessarily

disposes of all the others, we have grouped the bills presenting all these questions.

This court has held that an indictment for murder in the first degree embraces all degrees of homicide, and a person, under such an indictment, may be convicted of murder in the second degree, manslaughter and negligent homicide; that such an indictment also embraces assault to murder, aggravated and simple assault, and under these decisions it would necessarily follow that a grand jury, in presenting an indictment against a person charging him with murder in the first degree, also presented against him a charge for all the other degrees of homicide, and lesser offenses embraced in such a charge, and of which he could be convicted on a trial for murder in the first degree. Not only do our decisions so hold, but such holding is in accordance with the plain mandate of our Code of Criminal Procedure. Article 752 provides: ."The following offenses include different degrees: Murder, which includes all the lesser degrees of culpable homicide, and also assault with intent to murder.   *   *   *   Every offense against the person includes within it assaults with intent to commit said offense, when such attempt is a violation of the penal law.   *   *   *   Every offense includes within it an attempt to commit the offense.'' And in Article 630 it is provided: ''The district or county attorney may, by permission of the court, dismiss a criminal action at any time upon complying with the requirements of Article 37 of this Code;'' and Article 37 reads: ''The district or county attorney shall not dismiss a case unless he shall file a written statement with the papers in the case, setting out his reasons for such dismissal, and no case shall be dismissed without the permission of the presiding judge, who shall be satisfied that the reasons so stated are good and sufficient to authorize such dismissal.'' Article 9 of the Penal Code provides that the Code, and every other law upon the subject of crime which may be enacted, shall be construed according to the plain import of the language in which it is written, without regard to the distinction usually made between the construction of penal laws and laws upon other subjects. This article has been frequently before this court, and it has consistently been held that it does away with the strict construction of penal statutes and substitutes therefor the plain import of the language in which they are written. Randolph v. State, 9 Texas, 521; Ex parte Gregory, 20 Texas Crim. App., 210; Murray v. State, 21 Texas Crim. App., 620; Searcy v. State, 40 Texas Crim. Rep., 460; Bowman v. State, 38 Texas Crim. Rep., 14.)   And it has further been held that the courts must be controlled by the legislative intent when that is plainly manifest. Ex parte Robinson, 28 Texas Crim. App., 511; Ex parte Creel, 29 Texas Crim. App., 439; Rigby v. State, 27 Texas Crim. App., 55, and Brooks v. Hicks, 20 Texas, 666. Many other cases could be cited, but we deem it unnecessary as this ruling is in accordance with the uniform decisions of this court, and our Supreme Court when it had jurisdiction in criminal cases.

An indictment for murder in the first degree including, as it does, all the lesser degrees of culpable homicide, and the district and county attorney being authorized by law to dismiss the entire prosecution, if consented to by the trial judge, it follows that he has the authority to abandon the prosecution as to any degree of offense embraced within an indictment, if such action is sanctioned and approved by the trial judge. The granting of the greater power necessarily included the lesser power, and is clearly within the plain intent and meaning of the law as enacted by the Legislature.

As it is only in capital cases that a person is entitled to select a jury from a special venire, drawn by order of the court in that case, when an offense charged has been reduced by legally constituted authorities to a degree of the offense less than capital, the defendant is not entitled to have a special venire drawn. This was announced in Cheek v. State, 4 Texas Crim. App., 444, and has been followed in all our decisions since that date.

After the court had overruled the above pleas, and the defendant still declining to plead, the court entered a plea of not guilty for him. The defendant objected to going to trial before the jury then empaneled. It is made to appear that a regular jury was drawn by jury commission, but only seventeen of those thus selected were in attendance, the remainder of the jury drawn for that week having been excused, or were disqualified. The court in approving this bill states: "The above and foregoing bill is allowed with the following explanations. The jury drawn by the jury commissioners for the third week of the District Court was summoned, some of them were sick and sent their written excuse, some were disqualified to serve as jurors and others presented legal excuses and were excused by the court. So that there were only seventeen of the regularly drawn venire present on Monday the first day of the present week, and the court ordered the sheriff to summon talesmen to fill the panel and the panel was filled for the week with legally qualified jurors, and the list tendered to the defendant to select a jury from were regularly drawn by the clerk from the jury of the week in the usual and ordinary way." As thus qualified the bill presents no error, as it is shown that the court complied with the law in securing additional jurymen.

In bill No. 5 it is shown that defendant objected to a portion of the testimony of the witness John Dancy. This witness testified that appellant came to his house that night and told him he had stabbed deceased, and showed him the knife, which had blood on it, and, among other things, told him to tell "Sylvana not to give him out for the next ten years, because ten years was not too long for him; to tell her that he walked all the way from Valley Junction with his knife in his hand to give her the dose that Shorty got, but Shorty stepped in his way." The defendant objected to the court permitting the witness to state what defendant told him to tell Sylvana. This testimony was admissible, and the court did not err in admitting it. The record

would show from the State's standpoint, that Sylvana had been the mistress of defendant; that deceased was with this negro woman that night and killed in her presence, and presumably because he was with this woman, and the testimony would indicate that he has only killed deceased about this matter, but was in a state of mind to do other and additional murder, and comes so close after the killing as to be res gestae of that affair.

The only other bill of exceptions in the record complains of the failure of the court to give appellant's special charge. This charge was in relation to certain testimony which tended to impeach the witness, Sylvana Miles. The court in his main charge instructed the jury: "The State introduced on recall of the witnesses Clara Clay and Leonard Blaylock their evidences as to certain statements alleged to have been made to them by Savannah Miles, and I instruct you that you will not consider said testimony as proving or tending to prove any fact or circumstance against the defendant; but you will consider it, if you consider it at all only in passing upon the credibility of the witness Savannah Miles." This fully and correctly presented the matter to the jury, and there was no necessity to give the charge requested.

We have carefully considered each and every ground in the motion for new trial, and none of them present error. The evidence fully supports the verdict.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied January 15, 1913.—Reporter.]