JOSEPHINE CLAY v. THE STATE.

No. 2439.   Decided May 14, 1913.

**1.—Murder—Murder in Second Degree—Special Venire.**

Upon trial of murder, where the district attorney filed a written motion that defendant be placed on trial for murder in the second degree, which motion was sustained and defendant required to select the jury from the panel of the week, without a special venire, there was no error. Following Gentry v. State, 152 S. W. Rep., 635.

**2.—Same—Evidence—Other Transactions—Former Difficulty.**

Upon trial of murder, where defendant offered testimony that the deceased about a month before the homicide assaulted her and threatened to kill her, and again shortly before the homicide assaulted and threatened to kill her, it was reversible error to refuse to admit in evidence such testimony.

**3.—Same—Evidence—Previous Acts and Declarations of Deceased.**

Where, upon trial of murder, defendant testified that the deceased was approaching her with a knife, saying that he was going to kill her, previous acts, a short time before the homicide in which he attempted to kill or to inflict serious bodily injury, should have been admitted in evidence as bearing on her good faith in claiming that deceased would kill her.

**4.—Same—Continuance—Practice on Appeal.**

Where the judgment is reversed and the cause remanded for other grounds, the overruling of a motion for continuance need not be considered on appeal.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

C. E. Lane, Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was indicted, charged with murder in the first degree. Before announcing for trial the district attorney filed a written motion stating the evidence would not sustain murder in the first degree, and asked that appellant be placed on trial for no higher grade of offense than murder in the second degree, which motion was sustained by the court by order duly entered, when the court refused to order a special venire summoned, and required appellant to select a jury from the panel for the week. In this the court did not err. In Gentry v. State, 152 S. W. Rep., 635, we discussed this question at length, and do not deem it necessary to do so again.

The defendant testified in her own behalf, and said, on the morning of the difficulty deceased came home angry. After some words she details the difficulty as follows: "He commenced cursing me, and from that we got to quarreling, and he hauled off then and hit me, hauled off then and slapped me two or three licks over the head; I asked him what he was jumping on me for; he said, 'God damn you, I intend to kill you,' and then I and him was that time then at the front hall door; and then his mother and little girl came there and caught hold of him and commenced trying to catch him and hold him away from me, and he slapped me three or four times over the head, and he ran his hand in his pocket and pulled his knife out. He said, 'Mama, I am going to cut her God damn throat. I am going to kill her'; he had me back up against the wall holding me with that hand and had his knife drawed back, and I hollered for my girl; she was hollering to him, 'Calvin, don't kill Josephine for nothing.' He said, 'I am going to cut her God damn throat,' and had his knife brought back and had my back against the wall. I called Lina, I said, 'Come here and help me, don't you see Cap here trying to kill me.' When I called for Lina, as to what kept him from stabbing me, he had me against the

wall and his mama and daughter was holding down his hand so he couldn't cut me with the knife; I hollered for Lina and she came running, and she came to the steps and throwed up both hands and says, 'Oh, Cap, don't kill my mama'; he said, 'I won't only kill her, but you God damn winch, I will kill you'; and at that time he throwed out after her, and then his ma and his daughter put me in the bedroom, and then she sends Babe on out to hunt for Buddy, his brother; and then mama and me was in the room; mama had me in the bedroom talking to me, and I said, 'Mama, I ain't going to do anything to him if he don't try to kill me.' She said, 'I don't know what is the matter with Calvin,' and so he kept on. I was standing on the foot of my bed. She was kinder on, kinder at my back, and he came back. After he had been chasing Lina he came back and pushed the door wide open and made two steps at me with a knife; I ducked betwixt mama and the foot of my bed under him, and when he made the third one, I pointed the gun right up that way and fired."

After testifying as above, the defendant offered to testify to the following facts, as shown by bill of exceptions No. 5: "That at one time about a year before the homicide, while they were living near the store of Banner Manake, that he tried to kill her with a bed slat, and that he would beat and bruise her, and she only saved her life by flight and that afterwards and a short time before the homicide while she was living near Tony Magetta, he assaulted her with a club and his fist, and that at another time about a month before the homicide he again assaulted her and beat her and threatened to kill her, and that on the Thursday before the homicide he assaulted the defendant and beat her and threatened to kill her." The court sustained an objection to this latter testimony, and in that we think he erred. It would tend strongly to support her plea that she thought and believed he intended to kill her at the time she shot him, and the jury is to view the circumstances as it reasonably appeared to her at the time.

Appellant also offered to prove some of the same facts by Banner Manake and Tony Magetta, and the court erred in excluding this testimony also. When a defendant testifies that the deceased was approaching her with a knife, saying he was going to kill her, previous acts, a short time before, in which he attempted to kill or inflicted serious bodily injury, are admissible in evidence as bearing on her good faith in claiming that she then and there feared she would be killed.

It is useless to discuss the bill relating to the overruling the motion for a continuance as the case will be reversed, and it will not likely occur on another trial.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*