HENRY VILEY v. THE STATE.

No. 6604.    Decided February 1, 1922.

Rehearing Granted October 18, 1922.

**1.—Robbery—Evidence—Arrest—Bill of Exceptions.**

In the absence of a bill of exceptions, with reference to the statement of defendant while under arrest, the matter cannot be considered on appeal, and the mere statement of grounds of objection in a bill of exceptions is not sufficient. Following Funk v. State, 84 Texas, 410.

**2.—Same—Rehearing—Robbery With Firearms—Indictment—Special Venire.**

Where the indictment charged that the defendant did by using and exhibiting a firearm, to wit, a pistol, make an assault in and upon one C.

J. Brownie, hereafter called the injured party, and did then and there, by means aforesaid, use violence, to and upon the said injured party, and by the use and exhibition of said pistol as aforesaid did put the said injured party in fear of life and bodily injury, and used no other allegation, to charge any other phase of robbery, the defendant was entitled to a special venire, and his request therefor being denied, the same was reversible error although the State had waived capital punishment. Lattimore, Judge, dissenting. Following Kerley v. State, 89 Texas Crim. Rep., 499, and other cases.

**3.—Same—Special Venire—One Day to Inspect Venire List—Capital Punishment.**

Where, upon trial of robbery by firearms, it was made to appear that the State did not intend to ask for a capital conviction, and there was no other allegation of any other phase of robbery than that by firearms, defendant's request that he be furnished with a special venire, and for one day in order to look over said venire list, should have been granted, and refusal of such request was reversible error. Lattimore, Judge, dissenting.

Appeal from the Criminal District Court of Tarrant. Tried below before the Hon. Geo. E. Hosey.

Appeal from a conviction of robbery by firearms; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Robertson & Lopp,* for appellant.—Cited cases in opinion.

*R. G. Storey,* Assistant Attorney General, *Jesse M. Brown,* Criminal District Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the Criminal District Court of Tarrant County of the offense of robbery, and his punishment fixed at five years confinement in the penitentiary.

Without going into details the facts show substantialy that on the night in question the alleged injured party went to his boarding house and was confronted by three men on the porch, appellant and two other negroes being positively identified by said prosecuting witness as the three men. Witness said that one of them stuck a gun in his face and ordered him to "stick em up," and that he stuck up his hands, and that each of the three men participated in taking property from his person; one of them took his purse and money, and another took his tobacco pouch and a knife, and that appellant took his watch and chain. After getting his property the three left and were followed by said witness who, after keeping them in sight for some time, went and procured officers with whom he further pursued the alleged robbers. Coming in sight of three men on a railroad track, the officers asked him if they were the ones and upon his affirmative answer the car in which the pursuers were, was stopped. Thereupon the parties on the railroad track took to flight

and the officers fired pistols. Appellant at once surrendered and the other two fled further and hid, one in a barn and one in a Mexican house, but were shortly afterward captured. All three of the men were taken to the city hall and upon search the money and purse of prosecuting witness were found upon one of them, and the knife of said witness upon another. The watch of said witness was not found at that time but was later found in a wagon near the route taken by the parties.

By a bill of exceptions complaint is made that certain statements of one Hill, one of the three parties accused of the robbery, were admitted on the trial of appellant. The ground of objection as stated to the lower court appears to have been that appellant was under arrest, had not been warned, and said statements were not reduced to writing and not shown to have been made in the presence of appellant, etc. We no where find in said bill of exceptions any statement that these grounds of objection, as stated, were in fact true. The trial court admitted the evidence. We must indulge all presumptions in favor of the correctness of the ruling. The mere statement of grounds of objection in a bill of exceptions, is not equivalent to nor does it do away with the necessity for, a showing in such bill that the matters stated as grounds of objection, are facts. Unless this be shown no error would appear. Funk v. State, 84 Texas Crim. Rep., 410.

A number of complaints are made of the fact that there was no special venire drawn, and that appellant's request therefor was denied, and that he was refused a continuance for one day in order to look over a venire list, etc.

Appellant was charged by indictment with robbery, it being alleged that the offense was committed by an assault, by violence and by the use of a firearm. It is made to appear by the court's qualification to the bills of exceptions that the state abandoned the death penalty and no examination was made of any of the jurors relative to their attitude toward the infliction of the death penalty; and an examination of the charge of the lower court reveals the fact that no other theory of robbery was presented to the jury save that of an ordinary robbery by assault and violence. The issue of a robbery by firearms was not submitted. The jury were given no opportunity to inflict the death penalty, nor were any instructions relative to a capital offense given. It is only in a capital case that it is necessary to summon a special venire. The State may indicate to the court its purpose not to ask for a capital conviction in a murder case, and if the court agree and the issues pertaining to such capital offense be not submitted upon the, trial, the failure or refusal to have a special venire to try such case, would not be available to the accused. Gentry v. State, 68 Texas Crim. Rep., 567, 152 S. W. Rep., 635; Clay v. State, 70 Texas Crim. Rep., 451, 157 S. W. Rep., 164; Miller v. State, 74 Texas Crim. Rep.,

648, 169 S. W. Rep., 1164; Walker v. State, 28 Texas Crim. App., 503; Gonzales v. State, 88 Texas Crim. Rep., 248, 226 S. W. 405; Crouch v. State, 87 Texas Crim. Rep., 45, 219 S. W. 1099. We are of opinion that under these facts appearing in the record appellant was not entitled to a special venire, nor to any of the delays or other matters of procedure resting upon the selection of a jury drawn under such venire writ.

The evidence appearing in the statement of facts is very short. Appellant did not take the stand and testify. The prosecuting witness and the two officers were the only witnesses. The identification of appellant was positive. His guilt was undenied.

We find no reversible error in the record and the judgment will be affirmed.

*Affirmed.*

ON REHEARING.

October 18, 1922.

HAWKINS, Judge.—Article 1327, Vernon's Penal Code reads as follows:

"If any person by assault or violence or by putting in fear of life or bodily injury shall fraudulently take from the person or possession of another any property with intent to appropriate the same to his own use, he shall be punished by confinement in the penitentiary for life or for a term of not less than five years; and, when a firearm or other deadly weapon is used or exhibited in the commission of the offense, the punishment shall be death, or by confinement in the penitentiary for any term not less than five years."

Since the Article was amended by adding the last clause which enhances the punishment where a firearm or other deadly weapon is used our decisions have not been harmonious relative to indictments charging the offense of robbery. (See Murdock v. State, 52 Texas Crim. Rep., 262, 106 S. W. Rep., 374; Green v. State, 66 Texas Crim. Rep., 466, 147 S. W. Rep., 593; Bell v. State, 77 Texas Crim. Rep., 146, 177 S. W. Rep., 966; Robinson v. State, 67 Texas Crim. Rep., 79; 149 S. W. Rep., 186; Lay v. State, 82 Texas Crim. Rep., 202, 198 S. W. Rep., 291). However, we regard the controversy as settled by the opinion in Crouch v. State, 87 Texas Crim. Rep., 115, 219 S. W. Rep., 1099. Judge Davidson, who wrote the opinion in Murdock's case and dissented in Green's and Robinson's cases was a member of this court when Crouch's case was decided and agreed to the opinion without comment or dissent. We advert to the foregoing cases because some of them are referred to in appellant's brief on rehearing. In Crouch's case the indictment charged as follows:

"Charles I. Crouch in and upon W. C. Carter did make an assault and did then and there by said assault and by violence and by putting

said W. C. Carter in fear of life and bodily injury, and by then and there using and exhibiting a firearm, to-wit: a pistol,'' etc.

It was urged that the indictment was duplicitous. In discussing that question this language was use.

''It is apparent from the statute that an element of robbery is an assault. To charge the offense of robbery with a deadly weapon it is obvious that an averment that in committing the robbery an assault with a deadly weapon was made would be appropriate.''

Further commenting the court said in substance, that where the robbery was charged to have been committed with firearms the effect of it would be to confine the State to proof that in committing the offense firearms were used. After referring to the conflicting opinions heretofore noted the court concludes the opinion in the following language:

''We are of the opinion that the view that the reference to the firearm or deadly weapon in the statute is but a matter of aggravation, and its embodiment in the indictment with the other elements of robbery does not render the indictment duplicitous.''

It is apparent from a reading of Article 1327 that the pleader may if he sees fit charge robbery in such a manner that it will be a capital case only. The indictment in the instant case, omitting formal allegations charges that:

''Henry Viley did by using and exhibiting a firearm, to-wit: a pistol, make an assault in and upon one C. J. Brownie, hereinafter called the injured party, . . . and did then and there by means aforesaid use violence to and upon the said injured party, and by the use and exhibition of said pistol as aforesaid did put the said injured party in fear of life and bodily injury,'' and then further alleges the fraudulent taking of the property from the said Brownie. It will be readily seen that no assault or violence is alleged except with a pistol. Appellant filed a motion asking that a special venire be drawn and summoned from which to select a jury. He also filed an application for continuance in which he says that he is charged with a capital offense, to-wit: robbery with firearms, and again requested that the cause be continued to a day certain, and that a special venire be ordered by the court. These requests were overruled. The orders of the court contain no reasons for a failure to order a special venire, and the only reasons we find are in qualifications to bills of exception to the effect that the ''State abandoned the death penalty,'' and that the ''State did not qualify jurors with reference to the death penalty.'' The evidence shows that the only assault made to effect the robbery was with a pistol. When the court submitted the case to the jury he did not submit the elements of robbery perpetrated in an assault with a pistol, but told the jury in substance that if appellant made an assault upon the person of C. J. Brownie and by said assault and by violence did fraudulently take property from his per-

son, they should find him guilty and assess his punishment at confinement in the State penitentiary for any term of years not less than five. Appellant in a timely manner excepted to the charge of the court because the law applicable defines the punishment to be by death or for any term of years not less than five; and because the only allegation in the indictment and the evidence on the trial raised the issue of robbery committed by the use of firearms alone, rendering it a capital offense and, no other. In every way possible appellant insisted that he was entitled to have a special venire from which to select his jury. The question is: Could appellant, under the indictment as drawn, be deprived of his right to have a special venire?

In a capital case the accused is entitled to a special venire (Article 657, Vernon's C. C. P.) and assuming that he is to be tried for a capital offense, he is within his rights when he demands it. In denying appellant's request we apprehend the court below believed he was within the rule announced in Gentry v. State, 68 Texas Crim. Rep., 567, 152 S. W. Rep., 635; Clay v. State, 70 Texas Crim. Rep., 451, 157 S. W. Rep., 164, and other cases, viz: that State's counsel may dismiss the prosecution for murder and the accused be put upon trial for lesser degrees of the offense embraced in the indictment, and in such event no special venire would be necessary; and also that he was within the rule announced in Weaver v. State, 52 Texas Crim. Rep., 11, and Gonzales v. State, 88 Texas Crim. Rep., 248, 226 S. W. Rep., 405 the last two being robbery cases. There can be no question of the soundness of the rule in murder cases, because that is an offense of different degrees, and upon an indictment for murder conviction may be had for any lesser offense included in the charge. Neither is there any doubt in our minds as to the correctness of the proposition announced in the Weaver and Gonzales cases; *but the form of indictment in those cases must be kept in mind.*

In Miller's case, 74 Texas Crim. Rep., 648, 169 S. W. Rep., 1164, the indictment contained counts for robbery and theft from the person. The State dismissed as to the robbery count, and we held a special venire could not be demanded. In Walker v. State, 28 Texas Crim. Rep., 503, the indictment was for murder, but the State admitted the defendant was under seventeen years of age, and under Article 35 P. C., the admission took the case out of the "capital offense" class. We regard it as settled by Crouch's case, (*supra*) that Art. 1327 P. C. does not define two offenses but one only, and that robbery. It may be committed in various ways, namely; (a) by an assault, (b) by violence, (c) by putting in fear of life or bodily injury; and when the assault, or the violence, or the putting in fear of life or bodily injury, is accompanied or effected by the use or exhibition of a firearm or other deadly weapon that may be alleged, and then the charge becomes a capital offense. The indictment may allege the perpetration of the robbery in any one or in all of the various ways

pointed out in the statute. In Weaver's case, Judge Davidson in the opinion uses the following language:

"The indictment charges appellant with violation of the statute denouncing the .punishment for robbery, *and charges practically every phase of the statute,* including robbery with weapons. When the case was called for trial the State abandoned and *dismissed* that portion of the indictment which charged robbery by the use of deadly weapons. It is contended this dismissed the entire case from the docket, and there was nothing upon which to try the case. This we do .not believe to be the law. Where a statute denounces an offense and the different ways by which it might be committed, the pleader may select either or may embody in the indictment all and every means charged in the statute."

We quote from the Gonzales case, *supra,* as follows:

"The indictment charged robbery by *assault and violence, and also charged the use of firearms.* The crime of robbery by assault is a felony, but not capital; however, when deadly weapons are used it becomes capital, Penal Code, Art. 1327. Where the indictment contains *both phases* of the crime, that charging the use of firearms, which merely enhances the punishment, is not essential, and it would be within the power of the State to abandon that phase and prosecute upon the other. Crouch v. State, 87 Texas Crim. Rep., 115. The State, in the instant case, as we understand the record, pursued practically this course, by announcing *that that part* of the indictment making it a capital case would not be insisted upon. The indictment was filed during term time, and the case at the same term was tried about forty days after the indictment was presented. No request was made by either the State or the appellant for special venire. When announcement was made, the appellant advised the court that he would claim the privilege of exercising fifteen peremptory challenges. ·Being advised by the court he would not sanction this course, but would confine him to ten such challenges, they proceeded to select the jury, the appellant exercising eight peremptory challenges. In. a capital case the accused is entitled to a special venire, and assuming that the appellant was to be tried for a capital offense, he would have been within his rights to demand a special venire at the time the case was called for trial. Farrar v. State, 44 Texas Crim. Rep., 236; Burris v. State, 36 Texas Crim. Rep., 14. Whether his failure to demand a special venire at that time was a waiver of that right, under the circumstances we need not decide, as in our judgment the action of the State, which was sanctioned by the trial judge, *amounted* to a *dismissal* of *that part* of the indictment which made the *case capital.* At least it amounted to an election upon the part of the State to abandon *that part* of the indictment, which did not prejudice its right to proceed with the *remainder,* which charged a felony not requiring a special venire. Weaver v. State, 52 Texas Crim. Rep., 11."

The indictment in the instant case does not undertake to charge every phase of the statute denouncing robbery but charges only a robbery by assault with firearms and by violence committed therewith. As we understand the record before us the State did not undertake to abandon or dismiss any part of the indictment, for, indeed it could not have done so. There was only one part and that charged a robbery by the use of firearms. If the State had dismissed this charge then it might well have been contended as was done in the Weaver case that the entire case had been dismissed, and nothing left upon which to try appellant. But in Weaver's case the State abandoned and dismissed that portion of the indictment which charged robbery by the use of deadly weapons, there still remaining the vital portions of in indictment charging robbery by assault and violence. It will be seen that in the Gonzales case the indictment charged robbery by assault and violence, and also charged the use of firearms; it was held in that case that charging the use of firearms enhanced the punishment and it would be in the power of the State to abandon that phase and prosecute upon the others, to-wit: a charge of robbery by assault and violence independent of the use of firearms; but in the instant case they could not abandon or dismiss the phase of the indictment charging the use of firearms, because no other character of robbery was charged than one committed by their use. There does not appear in the record any effort on the part of the State to dismiss or abandon any part of the indictment because under the peculiar wording thereof it was doubtless understood by counsel representing the State and the court that it would leave no offense charged against appellant. What really happened was this: when appellant demanded a special venire it was sought to deny him that right by the State announcing it would not insist upon the death penalty. The correctness of this theory is borne out by the court's qualifications to the bills of exception, to-wit:—"the State abandoned the death penalty," and "did not qualify jurors with reference to the death penalty." The State not being in a position where it could abandon or dismiss any part of the charge against appellant, then the question remains could he be deprived of a special venire (a) by the State announcing that it would not seek the death penalty; and (b) the manner in which the case was submitted to the jury?

As was said by Judge White in Kouns v. State, 3 Texas Crim. App., 13.

"The charge (of the court) must set forth the law applicable to the case (Art. 735, Vernon's C. C. P.), and the case is the offense stated in the indictment. Stanfield v. State, 43 Texas, 167. The charge and proof must conform to, and should be limited by the specific offense as set forth in the indictment, except in cases admitting of lesser degrees, where it may be necessary to present the law applicable to such degrees."

See also McGee v. State, 5 Texas Crim. App., 492; Anderson v. State, 16 Texas Crim. App., 132; McGrew v. State. 19 Texas Crim. App.,.302; Cooper v. State, 22 Texas Crim. App., 419; Miller v. State, 28 Texas Crim. App., 445, Surrell v. State, 29 Texas Crim. App., 321; Otero v. State, 30 Texas Crim. App., 450; Drechsel v. State, 35 Texas Crim. Rep., 580.   Reverting to Miller's case, *supra,* we find that Miller was charged with a burglary by means of force, threats and fraud. The evidence showed force alone. The court however in his charge authorized a conviction not only on the use of force but by threats and fraud as well. The charge was excepted to, and the judgment was reversed. In the instant case the indictment charged assault and violence committed with a pistol and in no other way. The proof sustained the allegations. Appellant believed if the lower court in his charge followed the allegations in the indictment and the proof (which he had a right to expect he would do under Art. 735 C. C. P., and the authorities cited) that he was not only being put on trial for a capital offense, but that the same should be so submitted to the jury under the proof. But the court in the charge abandoned the pistol and authorized a conviction for a robbery committed by any kind of an assault or violence. He not only did not follow the indictment and proof, but abandoned the statute as well in not giving the penalty applicable under the allegations and evidence. This the court was unauthorized to do, and in our opinion would not cure the error in declining to provide a special venire.

When appellant requested the special venire and was refused on the ground that the State had abandoned the "death penalty" he found himself much in the same position that the defendant was in Kerley v. State, 89 Texas Crim. Rep., 199, 230 S. W. Rep., 163. Kerley was charged with rape. He did not ask for a special venire, but did demand his right to fifteen challenges because he was charged with a capital offense. (Article 691, C. C. P.) The prosecuting attorney expressly stated there, as in the present case, that he would not insist upon the death penalty, whereupon the court restricted the defense to ten challenges. There was no effort to dismiss the charge of rape and prosecute for assault with intent to commit rape. In our opinion reversing the judgment will be found this language:

"The appellant, we think, justly insists that rape was made a capital offense by the law-making power of the State, and that its classification as such cannot be changed by any declaration that the prosecuting attorney may make."

So in the instant case the Legislature has made robbery when firearms are used in its perpetration a capital offense. The State having elected to charge in the indictment against appellant that kind .of robbery and no other, the indictment under the Legislative Act classified the offense as capital. The State being in a position, by reason of the restrictive allegations, where it could not dismiss as to the

capital offense charged could not deprive appellant of a special venire by waiving the "death penalty" any more than Kerley could have been denied his fifteen challenges by the same announcement.

Upon a more critical analysis of the form of the indictment, and more thorough examination of the authorities, we have reached the conclusion that we were in error in our holding in the original opinion, and the order of affirmance is set aside, and the judgment of the trial court is reversed and the cause remanded.

*Reversed and remanded.*

### ON REHEARING.

### October 18, 1922.

LATTIMORE, Judge (dissenting).—My brethren think because of what it termed the peculiar wording of the indictment herein that the State could not dismiss or abandon the capital feature of the robbery charged against appellant, and that error was committed in refusing his request for a special venire. I do not agree with them, unless we overturn what seems to be a settled doctrine in this State under the opinions of such jurists as Judge White, Davidson and others, including the present presiding judge, that the State had the right in a case such as this to announce its abandonment of the death penalty and thereby deprive both itself and the accused of any right to a special venire.

We need no citation of authorities to make clear that unless the death penalty can be inflicted upon the accused as a result of the trial, a special venire cannot be demanded by either side, as Article 655 of our Code of Criminal Procedure provides only for special venires in capital cases, and Article 56 of our Penal Code states that an offense for which the highest penalty is death, is a capital felony.

The question then arises can the State through its attorney with the approval of the trial judge, in a given case wherein the indictment on its fact charges a felony whose highest punishment is death, dismiss or abandon as to the death penalty and proceed as in an ordinary felony case? The earliest authority on this point in this State seems to be Walker v. State, 28 Texas Crim. App. 503, an opinion by Judge White, concurred in by Judges Hurt and Willson. Walker was charged with murder and demanded a special venire, which was refused. The State admitted that the accused was under seventeen years of age and, therefore, could not be capitally punished even though he be convicted of murder in the first degree. Upon this admission being made by the State the trial court denied the request of the defense for a special venire. This court said: "The case was not a capital case and consequently the court did not err in overruling the defendant's motion for a special venire." It is worthy of note, as bearing on its similarity to the principle involved in the

instant case, that the question of whether this case was capital or not, was not decided by the trial court nor by this court on the form of the indictment, but on the admitted facts of the case itself. That the question as to whether a case be capital or not is not to be decided on the form of the indictment seems evident and sound. In Cheek v. State, 4 Texas Crim. App. 444, is stated that which has never been questioned since, i. e., that one who is charged with murder of the first degree and convicted of a lower grade of homicide may, after reversal or new trial, be tried again upon the same indictment for murder in the second degree or manslaughter, as the case may be, and notwithstanding the form of the indictment indicates a capital offense, he has no right to a special venire, the capital feature of the case having been disposed of. Parker v. State, 22 Texas Crim. App., 106. The form of the indictment but makes out a prima facie case, but the *case itself* may be admitted by the State to be less than capital, and thus capital procedure be avoided. In Walker's case, supra, there could be no sort of claim that the indictment charged anything save murder in the first degree; nor that the State abandoned anything save the death penalty; nor that this was abandoned because of any other reason except that the State knew what would be the proof in the case, and upon its admission of fact, which the State could not thereafter repudiate to the hurt of the accused, the death penalty was eliminated and the special venire went with it. All this is true of, and appears in, the instant case. Until now the principle laid down in the Walker case has not been disputed. In Weaver v. State, 52 Texas Crim. Rep., 11, Judge Davidson said:

"The indictment charges appellant with violation of the statute denouncing the punishment for robbery, and charges practically every phase of the statute, including robbery with weapons. When the case was called for trial the State abandoned and dismissed that portion of the indictment which charged robbery by use of deadly weapons. It is contended this dismissed the entire case from the docket, and there was nothing upon which to try the case. This we do not believe to be the law. Where a statute denounces an offense and the different ways by which it might be committed, the pleader may select either or may embody in the indictment all and every means charged in the statute."

This quotation indicates no disapproval of the action of the trial court in merely abandoning and dismissing that portion of the indictment charging robbery by the use of deadly weapons, but rather approves same.

This draws attention to the claim of my brethren that there is some peculiarity in the wording of the instant indictment which they seem to think justifies a distinction between it and indictments for robbery in other cases where in action, similar to that of the State in the trial in the court below in abandoning the death penalty, was upheld.

Omitting matters not necessary to this discussion, the indictment in the instant case is as follows:

"That one Henry Viley . . . did then and there by using and exhibiting a fire-arm, to-wit: a pistol, make an assault in and upon one . . . , and did then and there by means aforesaid use violence to and upon the said . . . , and by the use and exhibition of said pistol as aforesaid did put the said . . . in fear of life and bodily injury, and did then and there fraudulently and against the will and without the consent of . . . , take from his certain personal property, to-wit:"

My brethren are of opinion that this charges an assault and violence with a pistol and in no other way, and that the trial court could not, therefore abandon, as was done both in the selection of the jury and in the charge of the court, the death penalty feature of the robbery thus charged.

Let us examine the matter at some length. Our robbery statute is as follows:

Article 1327: " 'Robbery' defined and punished.—If any person by assault or violence or by putting in fear of life or bodily injury shall fraudulently take from the person or possession of another any property with intent to appropriate the same to his own use, he shall be punished by confinement in the penitentiary for life, or for a term of not less than five years; and, when a firearm or other deadly weapon is used or exhibited in the commission of the offense, the punishment shall be death, or by confinement in the penitentiary for any term not less than five years."

The language of this article fixes the fact that a robbery can be committed in any one of four ways: (1) By assault, (2) by violence, (3) by putting in fear of life, (4) by putting in fear of bodily injury. It also makes plain that when the assault, of the violence, or the putting in fear, etc., is accomplished by the use of a fire-arm or other deadly weapon, and it is so alleged, the punishment may be death, or imprisonment as in other cases of robbery. A capital felony is charged in any indictment when it alleges an assault with a firearm, or violence with a firearm, or the putting in fear, etc., by the use or exhibition of a firearm in connection with other elements of robbery. When an indictment charges in one count an assault and violence and putting in fear, by the use of a firearm, this charges but one offense as held by us in Green v. State, 66 Texas Crim Rep., 466 and charges that each of the several ways of committing robbery was by the use of the firearm, i. e., that the violence was with a firearm,— the assault was with a firearm, and the putting in fear, etc., was with a firearm. It can make no difference that the firearm is mentioned in such indictment after enumerating the assault, the violence and the putting in fear, etc., as is the case in those opinions in which this court has held that the death penalty could be abandoned

in robbery charges; or that the firearm be mentioned first,—as in the instant case. The grammatical as well as the legal situation is the same. There is no sort of difference in the statement that A on a certain date did make an assault upon B by shooting him with a gun; and the statement that A with a gun on a certain date shot B and thereby made an assault upon him. To make the illustration concrete: there is no just distinction between saying that A with a gun made an assault upon B and by said assault and by violence and putting in fear of life, did take from B etc., his property,—and saying that A did make an assault on B, and by said assault and by violence and by putting in fear of life by the use of a gun did take from B etc., his property. In either case the gun is necessarily alleged to be that by or with which the assault, the violence, as well as the putting in fear, was committed, and the gun can no more be abandoned or dismissed from the case when the indictment is as that last above described, then when it is as in the first description.

Reverting to Article 1327, supra, it will be noticed that after enumerating the four ways by which robbery may be committed, it is said "when a firearm or other deadly weapon is used or exhibited *in the commission of the offense,* the punishment shall be death, or by confinement in the penitentiary for any term not less than five years." The offense of robbery cannot be charged by simply saying that A by the use of a firearm did fraudulently take from B  . . . his property. Not at all. It must be alleged that there was an assault, or that there was violence, or that there was a putting in fear, etc. If the facts warrant it and the additional allegation of the use or exhibition of a firearm be made, this allegation may be before or after the enumeration of the four elements of robbery above mentioned, and either allegation would apply this additional element to each of said four ways just as pertinently and completely when named after them as when named before; and such allegation can be as legally dismissed or abandoned when made before the naming of said four ways of committing the offense, as when named afterward. To the writer this conclusion is inescapable.

This much has been said in view of the fact that my brethren do not seem to question the soundness of the opinions holding it permissible, in effect, to abandon the death penalty by the dismissal or abandonment of the allegation of the deadly weapon from such indictment, when the allegation of the use of a deadly weapon comes *after* the mention of the assault, violence, etc., in such indictment. I find myself wholly unable to comprehend the logic of this contention.

I refer to some of the decisions whose holdings bear out our contention. In Gonzales v. State, 88 Texas Crim. Rep., 248, an opinion by Presiding Judge Morrow, we find the following:

"One Malca was at night-time walking on the streets of the city of Wichita Falls, in company with a woman by the name of Ruby

Taggart, and a man who was his friend. Malca and his friend were accosted by two men, a pistol was presented, and their property, consisting of money and jewelry, taken from them. The woman fled, It is the State's theory that the woman, Ruby Taggart, the appellant, and a companion named McBride, were acting together. Malca and Ruby Taggart had previously met, and by agreement had occupied the same room at a hotel. He testified that upon her suggestion, he and his companion were going in her company to a place where she claimed there was another woman and something to drink. The assailants were strangers to Malca. He reported the robbery, and described the assailants, one as having the appearance of an Indian, and the other a smaller man. Subsequently, the appellant was arrested in the city of Fort Worth, occupying the same room and bed with Ruby Taggart, and in the room some of the property which was taken from Malca was found. Malca identified the appellant as one of his assailants, at the time of his arrest, and subsequently upon the trial.

The indictment charged robbery by assault and violence, and also charged the use of firearms. The crime of robbery by assault is a felony, but not capital; however, when deadly weapons are used it becomes capital, Penal Code, Art. 1327. Where the indictment contains both phases of the crime, that charging the use of firearms, which merely enhances the punishment, is not essential, and it would be within the power of the State to abandon that phase and prosecute upon the other. Crouch v. State, 87 Texas Crim. Rep., 115. The State, in the instant case, as we understand the record, pursued practically this course by announcing that that part of the indictment making it a capital case would not be insisted upon. The indictment was filed during term time, and the case at the same term was tried about forty days after the indictment was presented. No request was made by either the State or the appellant for special venire. When announcement was made, the appellant advised the court that he would claim the privilege of exercising fifteen peremptory challenges. Being advised by the court he would not sanction this course, but would confine him to ten such challenges, they proceeded to select the jury, the appellant exercising eight peremptory challenges. In a capital case the accused is entitled to a special venire, and assuming that the appellant was to be tried for a capital offense, he would have been within his rights to demand a special venire at the time the case was called for trial. Farrar v. State, 44 Texas Crim. Rep., 236; Burris v. State, 36 Texas Crim. Rep., 14. Whether his failure to demand a special venire at that time was a waiver of that right, under the circumstances we need not decide, as in our judgment the action of the State, which was sanctioned by the trial judge, amounted to a dismissal of that part of the indictment which made the case capital. At least it amounted to an election upon the part of the State to abandon that

part of the indictment, which did not prejudice its right to proceed with the remainder, which charged a felony not requiring a special venire. Weaver v. State, 52 Texas Crim. Rep., 11.''

It thus appears that the announcement of Judge Davidson in the Weaver case, supra, was approved in the Gonzales case while Judge Davidson was presiding judge of this court and two members of the present court were on the bench. . In the Gonzales case it is distinctly announced that when the State abandons that part of the indictment which makes of robbery a capital felony, i. e., the charge that such robbery was committed by the use of a deadly weapon,—it has the right to proceed without a special venire. In Gentry v. State, 68 Texas Crim. Rep., 567, 152 S. W. Rep., 635, approved in Clay v. State, 70 Texas Crim. Rep., 451, 157 S. W. Rep., 164, we find the following language:

''On the first day of the term, when this case was called, the district attorney announced to the court that it was not necessary to order a special venire, as he would not seek to convict the defendant of any higher degree of offense than murder in the second degree. Defendant, by his counsel, announced that, as defendant was indicted for murder in the first degree, he demanded that a special venire be ordered, filing a request to that effect. The court refused to order a venire, and set the cause for trial during the third week of that term of court. When the case was called for trial, the state announced ready, the defendant refusing to announce, stating as his reason that he was by indictment charged with murder in the first degree, was entitled to select a jury from a special venire, and as no special venire had been ordered, although requested by him, he should not be required to go to trial. The state's attorney then filed a written statement, alleging that the evidence in the case in his opinion was insufficient to warrant a conviction for murder in the first degree, and requested that defendant be placed on trial for murder in the second degree only. In the plea filed the district attorney used the language 'that the degree of homicide be reduced from murder in the first degree to murder in the second degree, and that the charge of murder in the first degree be dismissed, and that defendant be placed on trial for murder in the second degree only.' The Court entered up an order sustaining this plea of the district attorney. and announced to defendant he would be placed on trial for murder in the second degree. When the court announced he had sustained the request of the prosecution, the defendant filed a plea asking that he be discharged, on the ground that, as the grand jury in the indictment presented against him charged him with murder in the first degree, the court had no authority to 'reduce the degree of murder contained in the indictment;' that this in effect was finding a new indictment against him, and there was no authority under the

Constitution and laws of this state for any person or tribunal to present an indictment against any one other than a duly constituted grand jury; that, when the district attorney announced he would dismiss as to murder in the first degree, this in effect was a dismissal of the entire prosecution. In announcing that he would dismiss as to murder in the first degree, the district attorney did not dismiss the prosecution, but his acts were a mere abandonment of the prosecution as to murder in the first degree under this indictment."

My brethren assert that this doctrine is sound in murder cases upon the proposition that the State may abandon one or more degrees of an offense. This is distinction without difference. Under the law before the degrees of murder were abolished that which was necessary to charge murder in the first degree, to distinguish it from that of the second degree, was that the homicide was with "express malice aforethought." It was so charged in the Gentry and Clay cases, supra. This court held, and my brethren seem to hold with them, that upon the announcement of the State's attorney, sanctioned by the trial court, that the State would not seek to prove that there was express malice and would abandon the death penalty in a murder case, it was permissible; and notwithstanding the indictment contained the allegation of express malice, that it was correct to ignore this fact and submit the case only upon implied malice. To my mind this concedes the whole contention. The only effect of the insertion in an indictment in a robbery case that the assault, or violence or the putting in fear, etc., was with a firearm,—is to enhance the punishment. The only effect of adding an allegation of express malice in a murder case under the former law, was to enhance the punishment. If express malice may be simply abandoned in the one case and ignored in the charge of the court and in the selection of the jury, why may not the allegation of the use of a firearm be also abandoned in a robbery charge? The fact that the assault or violence or the putting in fear was actually accomplished by the use of a deadly weapon, will not present a variance when such fact appears in the proof, though not in the allegation. Carroll v. State, 42 Texas Crim. Rep., 30; Wyatt v. State, 55 Texas Crim. Rep., 73, 114 S. W. Rep., 812; Wyatt v. State, 58 Texas Crim. Rep., 115, 124 S. W. Rep., 930.

There was no exception to the charge of the court in the instant case because it did not submit the issue to the jury as to whether the assault and violence was with a pistol, and hence no complaint of the matter can be here considered, nor should it be discussed in this opinion as it would simply be *dicta*. That an indictment for robbery with a firearm, same being a deadly weapon, comprehends an assault to rob, an aggravated assault, and a simple assault, seems settled since the Foreman case, 57 Texas Crim. Rep., 843, in which this court said:

"Applying the rule deduced from the authorities, we apprehend

that, under an ordinary indictment for robbery, or an assault with intent to rob, a conviction could be maintained for a simple assault. Why? Because the indictment would contain all the essential elements of a simple assault, and, if the proof failed to show the element constituting the offense robbery, then, the averments creating a simple assault being proven, a conviction might be maintained. Furthermore, if an indictment for robbery contained the allegation, under the recent statute, that it was committed with a firearm, the same being a deadly weapon, and also alleged an assault with such deadly weapon, then a conviction for an aggravated assault might be maintained under such indictment, because it would contain all the essential elements creating one character of an aggravated assault. This would be under the principle already anounced, that an indictment for the graver offense contained, also, every essential element of the minor offense, and, the proof failing to show the element which constituted the graver offense, a conviction might be had for the minor.''

In Wyatt v. State 55 Texas Crim. Rep., 73, wherein the accused complained of a conviction under an indictment charging robbery in the ordinary form, upon the ground that the proof showed robbery with firearms, this court said:

''It is true the State could have charged a *higher* grade of offense, but having neglected to do so, it is not a matter of which the appellant can complain.''

In Carroll v. State, *supra*, Judge Davidson said:

'The indictment charged robbery by means of an assault, and by violence, and by putting in fear of life and bodily injury. On the trial the evidence disclosed, in addition to this, that appellant used firearms. It is contended that this constitutes a variance between the allegation and the evidence. There is no merit in this contention. Charging the robbery to have been committed by the use of firearms would have entitled the State to a higher punishment, but this does not debar the prosecution from relying upon the robbery by an assault, and by putting in fear of life, etc. The State had the right to select these facts, and charge upon them, and this conviction could be pleaded in bar to a prosecution for any other phase of the transaction.''

In the Wyatt case, 58 Texas Crim. Rep., 115, 124 S. W. Rep., 930, the same learned judge used the following language:

''Another bill of exceptions presents the matter of variance. The evidence discloses that appellant struck Dixie Harris over the head with a six-shooter at the time of the robbery. Appellant's contention is that this was a robbery with firearms, and, this being true, it constituted a variance, because the indictment only charged that the robbery occurred by means of an assault and violence by putting

Harris in fear of his life and bodily injury. The indictment does charge the assault was made by violence. While the pistol was used in making the assault, it was used as a buldgeon, and not for the purpose of shooting. Concede that under this state of facts the state would have been justified in charging robbery by means of deadly weapons, still we are of opinion that under the circumstances appellant cannot be heard to complain that the state did not so charge, but only prosecuted him for robbery by means of an assault and violence. An assault was committed, and violence was used by means of striking with the pistol; but the mere fact that this was done by the use of a pistol as a bludgeon would not, in our judgment, constitute a variance. The facts met and established the allegation in the indictment that this robbery was by means of an assault and violence. The pistol was not fired at the time, nor used as firearms, but was only used as a bludgeon. Subsequently to the robbery, and after appellant had separated from his victim, and had gone about a block or such matter, there was a pistol fired, but not at the assaulted party, and this was subsequent to the robbery. We are therefore of opinion that this contention is without meirt.''

What process of reasoning would bring one to the conclusion that appellant might complain of the charge, in the instant case, for not submitting to the jury the law of robbery with firearms, the writer is unable to comprehend. In Briscoe v. State, 37 Texas Crim. Rep., 468, this court, through Judge Davidson, said:

''It is urged that the court erred in charging the law applicable to a case of murder in the second degree, upon the ground that the facts showed murder in the first degree, if appellant was one of the guilty participants in the homicide. We do not so understand the law. While the testimony may have shown a cold-blooded and unprovoked killing, still the defendant cannot complain that the court gave him the benefit of a possible doubt as to the origin, cause, and attendant circumstances of the homicide, and submitted the issue of murder in the second degree.''

In Robinson v. State, 57 S. W. Rep., 812, the appellant strenuously insisted that the trial court erred in submitting the law of manslaughter, upon the ground that the evidence did not support the issue. This court said:

''Certainly, then, if appellant's contention is correct that the evidence does not raise the issue of manslaughter, yet the court having given appellant the benefit thereof, and the verdict of the jury responding to said supposed erroneous charge, indicates that appellant has been benefited, and not injured, and he cannot be heard to complain in this court as to this.''

The indictment in the instant case charged the use and exhibition of a firearm, to-wit: a pistol. Following the well settled rule that

every reasonable intendment must be indulged in favor of the ruling of the trial court, supposed the State's attorney become convinced before this case was called for trial that while the assault charged was with a pistol, that same was not used to shoot with but as a bludgeon, or that the pistol was broken, or in some other such condition as to make same not to be a deadly weapon, or in fact a fire-arm? We have no more familiar rule than that a pistol is not necessarily a deadly weapon and may be used in many other ways than as a firearm. In such case if the trial court should desire to save the State the expense and trouble of a special venire, because it was agreed between the court and the State's attorney that the proof would not support a capital conviction, nor call for the submission of such an issue to the jury, what ground for complaint could the defendant have if the State announced and the trial court approved, that the only character of robbery upon which the State would rely would be that committed by assault or violence? There could be no claim of variance because the proof would show that a pistol, or that which in common parlance would amount to a pistol, was charged in the indictment. An assault would be proved. No error could be assigned, for the action of the trial court could only be in favor of the accused.

Again, by the terms of Article 89 of our Code of Criminal Procedure, the District Courts are expressly given power upon the trial of a felony case to hear and determine the case as to any degree of the offense included in the charge. There seems little room for doubt under the Foreman case, *supra,* and under sound reasoning, that an indictment charging the use of a firearm or a deadly weapon would include robbery in the ordinary form by assault and violence, etc.

If the writer is correct in his interpretation of this law and of the former opinions of this court, the District Court has power, as in the Walker case, *supra,* to decide before the case actually comes to trial, that he will not put the State to the trouble and expense of a special venire for the fact reason that the accused is too young (or for any other sufficient reason) to be capitally convicted, and to decide, as in the Weaver and Gonzales cases, supra, that under the facts in a given robbery charge he would not put the State to the trouble and expense of a special venire for that there were not facts to justify a capital conviction, or the submission of that issue to the jury,—and to decide as in the Gentry and Clay cases, *supra,* that in a murder case the facts would not justify the submission of first-degree murder, and that he would not put the State to the expense and trouble of a special venire. These propositions seem in accord with reason. The State has no appeal. Her interests in the first instance are entirely in the hands of the State's attorney and the District Court. They advise the grand jury. No power can compel the District Court to

retain a criminal case on his docket if he wishes to entirely dismiss it. Neither can such court be compelled to submit the death penalty in any given case when he does not think the facts justify it. All the decisions hold that the accused has no right to complain when the court submits only a less degree of crime than the one specifically set out in the indictment. My brethren are wrong. There was no proof introduced for the accused on the instant trial. The State's testimony was plain and overwhelming and showed the use of a pistol but no shooting with same. We should in no event reverse this case for the sole purpose of requiring the State to give to appellant a special venire when we are compelled to know that he has no desire to have the issue of a death penalty *vel non* decided against him, and when no power can compel the trial court to submit the death penalty in his charge, without which there could be no capital conviction, and when no complaint can lie in the mouth of appellant under all the authorities because of the refusal of the court to submit to the jury a graver offense, and lastly because appellant received at the hands of the instant jury the lowest penalty affixed to his crime, and could apparently, under the undisputed facts in this record, have received no less at the hands of any jury.

With much respect for the ability of my brethren, but being wholly unable to agree with them, for the reasons above set forth, I believe the motion for rehearing should be overruled, and therefore, respectfully record my dissent.