### L. W. GAY v. THE STATE.

#### No. 3964. Decided March 1, 1916.

#### Rehearing denied March 29, 1916.

1.—Illegally Practicing Medicine—Information—Arrest of Judgment.

Where, upon trial of illegally practicing medicine, the information followed the statutes and approved precedent, the same was sufficient, on motion to quash and in arrest of judgment.

2.—Same—Sufficiency of the Evidence.

Where, upon trial of illegally practicing medicine without first having registered a proper certificate, etc., the evidence sustained the conviction, there was no reversible error.

3.—Same—Temporary Certificate—No Defense—Evidence.

Upon trial of illegally practicing medicine, a temporary certificate from one of the members of the Medical Board was only good by its own terms until the next regular meeting of said Board, and was no defense in the instant case, and was not admissible in evidence.

4.—Same—Statutes Construed—Repeal of Former Law—Exemption— Verification Certificate.

The Act of the Legislature, approved April 17, 1907, page 224, now contained in the Revised Civil Statutes as articles 5733-46, inclusive, and most of them also in the Penal Code as articles 750-6, inclusive, repealed all other laws on the subject of licensing physicians, and the exemptions contained in article 757, Penal Code, were meant to be only temporary, and under article 752, Penal Code, all of said exempted persons must present the proper documentary evidence to the Medical Examining Board for a verification license which must be recorded in the district clerk's office of the county in which the licentiate resides.

5.—Same—Statutes Construed—Exemptions—Verification Certificate.

Under the Act of 1907, the law as it now stands, it is required that in order for any one who is exempted under said Act to thereafter legally practice medicine in this State in any of its branches, he must present his credentials to the Board of Medical Examiners as it now, and since 1907 has existed, and procure from such Board a verification license, and record the same as provided

by law, otherwise he violates the law; hence all of defendant's requested charges and other points raising the issue of former exemptions were correctly refused.

#### 6.—Same—Evidence—Exemptions—Practicing Medicine.

Upon trial of illegally practicing medicine, there was no error in refusing to permit testimony that defendant was practicing medicine as a college graduate, etc., under the former exemptions of the law, because as the law now stands these exemptions only last for one year after the different enactments, and the defendant is then required to get the verification license, and record it in order to entitle him to practice medicine.

#### 7.—Same—Constitutional Law—Medical Practice Act.

The Medical Practice Act of 1907, and which has since been carried forward in the Revised Civil Statutes and Penal Code, is constitutional and is not for the courts to pass upon the wisdom of the law, but their duty to enforce it.

#### 8.—Same — Statutes Construed — Rehearing — Exemptions — Verification License—Repeal.

Where, upon motion for rehearing, appellant claimed that article 757, Penal Code, was not a part of the Act of 1907 and not the law in whole or in part from the passage of said Act until it was placed in the revision of 1911, and that ever since it has been lawful for any physician to practice without any verification or other license, because he is embraced within said exemptions of said article 757, Penal Code, and that article 752, Penal Code, is, therefore, inapplicable to him, and that he can legally practice without any license and the record thereof. Held, that said contention is entirely untenable as said exemptions are only temporary, in order to give the person so exempted an opportunity to procure a verification certificate, and appellant not having done so has violated said articles 750 and 752, Penal Code, and he can not claim the exemptions as contained in article 757, Penal Code.

#### 9.—Same—Legislative Intent—Object of Legislation—Public Policy.

To protect the lives and preserve the health of the people is one of the chief objects and duties of government, and therefore the Legislature from time to time enacted laws to prevent incompetent persons from practicing as physicians. It is unnecessary to cite these various Acts of the Legislature, suffice it to say that the Act of 1907 repealed all previous legislation on the subject, and regulated the whole matter, and a practitioner of medicine now must register his authority for so practicing in the district clerk's office of the county in which he resides, and together therewith, an affidavit showing his age, post-office address, etc., and this section of said Act is made article 750, Penal Code, except the words, "from and after the passage of this Act," etc.

#### 10.—Same—Statutes Construed—Exemptions—Verification License.

Under section 6 of said Act of 1907, within one year after the passage of said Act, all legal practitioners of medicine in this State who practiced under the provisions of previous laws or under diplomas of a reputable college of medicine, who had not already received license from the Medical Examining Board, were required to present to said Board their diplomas or credentials and receive their verification license, and in the revision of the law that section is made article 752, Penal Code, literally, except the omission of the words, "within one year after the passage of this Act," and preceded by the words, "practitioner of medicine to receive verification license."

#### 11.—Same—Statutes Construed—Revision—Exemptions.

Section 16 of the Act of 1907 required all certificates issued to medical practitioners under any former law to continue in force for one year only after the passage of said Act, and contained all exemptions which are now embraced in article 757, Revised Penal Code, which has taken its place, and, therefore, said exemptions, as contended by appellant, no longer exist, as otherwise article

752, Penal Code, would be a dead letter as to all those persons embraced in article 757, Penal Code, and no such intention by the Legislature can be drawn, either under said Act of 1907 or the law as now contained in the revisions only.

**12.—Same—Statutes Construed—Legislative Intent—Present Law.**

Said articles, supra (article 752 and article 757, Penal Code), must be construed together, and, in connection with previous legislation, and the said Act of 1907, and when so construed it is clear that no one can legally practice medicine or the healing art or science on human beings by any system or method with or without administering medicine and charge therefor, without first procuring a license to do so, and recording it in the district clerk's office of the county of his residence.

**13.—Same—Statutes Construed — Exemptions — Verification License— Legislative Intent.**

By section 15 all the old physicians were given one year, but no longer, to get the new verification license from the Board without standing any examination; however, by placing said article 757 in the Revised Penal Code, instead of section 15, it was intended, and only intended, they should still not be cut off entirely as section 15 provided, but were given another opportunity to procure a verification license by complying with said article 752, Revised Penal Code, and they still have that opportunity; but defendant not having complied therewith was guilty of a violation of the law.

**14.—Same—Informalities in Judgment—Practice—Precedent.**

Where appellant complained of some informalities in the judgment of the lower court, but said judgment sufficiently complied with the statute and former precedent, there was no reversible error. Following Terry v. State, 30 Texas Crim. App., 408, and other cases.

Appeal from the County Court of Comanche County. Tried below before the Hon. J. H. McMillan.

Appeal from a conviction of illegally practicing medicine; penalty, a fine of $50 and one hour confinement in the county jail.

The judgment of the lower court which the defendant attacked for informalities was as follows:

No. 3650.          State of Texas vs. L. W. Gay.

In the County Court, Comanche County, Texas.   October 4, 1915.

This day in the above styled and numbered cause wherein the State of Texas is plaintiff and L. W. Gay is defendant, came the State of Texas by her county attorney and the defendant in person, and also by her attorney, and after defendant's original motion and his amended and supplemental motion being overruled, and after defendant duly excepted to the ruling of the court, both announced ready for trial and thereupon came a jury of good and lawful men who, being duly empaneled and sworn, and having heard the pleadings, the evidence and the argument of counsel upon their oaths do say in open court that they find a verdict in favor of the State of Texas and return a verdict against the defendant, L. W. Gay, and assess his punishment at $50 fine and one hour in jail.

It is therefore ordered, adjudged and decreed by the court that the State of Texas recover from the said defendant the sum of $50, and all costs of this procedure, and that the said defendant be forced to

serve one hour in jail of Comanche County, Texas, for which execution
may issue for said fine and costs, and that said defendant be committed
to the custody of the sheriff of Comanche County, Texas, until all fine
and costs are paid and until judgment is fully satisfied.

The opinion states the case.

*A. B. Haworth,* for appellant.—Cited French v. State, 14 Texas Crim.
App., 76; Smith v. State, 5 id., 318; Hillard v. State, 7 id., 69.

*C. C. McDonald,* Assistant Attorney General, for the State.

PRENDERGAST, PRESIDING JUDGE.—Appellant was convicted for
unlawfully practicing medicine, and his punishment assessed at a fine
of $50 and one hour in jail.

The complaint and information aver that appellant resided in and
was a resident of said county, and that he "did then and there unlaw-
fully engage in the practice of medicine upon human beings for pay
in said Comanche County, and the State of Texas, and as a regular
practitioner did prescribe for, visit professionally, and treat patients
for diseases, towit: did visit, prescribe for and treat Mrs. H. J. Moore,
Beulah Renfro (daughter of W. R. Renfro), and divers other persons
to the affiant unknown without having first registered in the district
clerk's office of Comanche County, Texas, the county of said defendant's
residence, a certificate from some authorized board of medical exam-
iners for the State of Texas, or a diploma from some credited medical
college, and without having filed for record in the district clerk's office
of Comanche County, Texas, a verification license from the State Board
of Medical Examiners of the State of Texas." These pleadings fol-
lowed the law and are unquestionably sufficient. The court did not
err in overruling appellant's motions to quash the pleadings nor in
overruling his motion in arrest of judgment.

The uncontradicted testimony clearly sustained all of the allegations
and showed appellant's violation of the law.

The only authority to practice medicine which appellant had regis-
tered in the district clerk's office of Comanche County was a certified
copy from the district clerk of Wilson County dated December 7, 1914.
The document thus certified was as follows: "L. W. Gay, M. D. The
State of Texas, County of Wilson. Know all men by these presence
(presents) That L. W. Gay, of the County of Wilson and State of
Texas, has been this day examined be (by) me, I. H. Brewron, M. D.,
a member of the Medical Ex. Board of 25th Judicial District and is
hereby licensed to practice medicine, surgery and Obsteries (obstetrics)
until the next regular meeting of the Medical Board of this Judicial
District. In testimony whereof I hereunto affix my hand and seal this
8th day of December, 1892. Iaac H. Brewton, Member of Medical
Board." This, on its very face, showed that it was a mere temporary
license issued December 8, 1892, by a member of the medical board
under the old law as it then existed, and by its own terms was good

only until the next regular meeting of the medical board of the district mentioned. Under no circumstances could it be the verification license under the law as it has been since 1907.

The Act of the Legislature approved April 17, 1907, page 224, now contained in our Revised Civil Statutes as articles 5733-5746, inclusive, and most of them also in our Penal Code as articles 750-756, inclusive, repealed all other laws on the subject of licensing physicians. One section of said Act, now article 757, Penal Code, expressly exempted all persons who had been regularly engaged in the general practice for five consecutive years prior to January 1, 1875, and others who had legally qualified themselves to practice under the provisions of the Act of May 16, 1873, and those who were practicing in Texas prior to January 1, 1885, and since, "who have complied with the law of this State regulating the practice of medicine in force," meaning, of course, all such otherwise exempted persons who have complied with said Act of 1907. And another section of said Act, article 752, Penal Code, expressly requires that all of said exempted persons by said article 757 shall present to the Board of Medical Examiners under said Act of 1907 all documents, or legally certified transcripts of such, sufficient to establish the existence and validity of their diplomas or the valid and existing licenses theretofore issued by any previous examining board or exemptions existing under any law, and, in effect, when they do this and show that they are embraced within any of said exemptions, that the present board, under said Act of 1907, shall issue to them a verification license, which verification license shall be recorded in the district clerk's office of the county in which the licentiate resides. It is unnecessary to enumerate the further provisions of said article. The Act and the said several sections thereof clearly show that in order for anyone who is exempted by the Act to thereafter legally practice medicine in this State in any of its branches he shall present his credentials to the said board as it now, and since 1907 has existed and procure from such board a verification license and record that; and, if they do not do so, but practice medicine without it, they violate the law and are subject to the penalties thereof.

The unquestioned evidence shows that appellant did not procure said verification license and record it, but practiced without it, and hence unquestionably has violated the law.

These exemptions, and none of them, would authorize appellant, without getting the verification license and recording it, to practice medicine. Hence, all of appellant's charges and other points raising said issue were correctly refused by the trial judge, and none of his bills show any error.

Because of the law above stated, the court did not err in refusing to permit appellant to testify, in substance, that he was practicing medicine in Texas prior to January 1, 1885, and had graduated in the State University of Louisiana in the Medical Department, in 1868, and came to Texas and immediately thereafter engaged in the general practice of medicine in its various branches and continued therein from

1868 until the complaint was filed against him herein. No such testimony by him under the circumstances would be any defense whatever. Nor did the court err in refusing the testimony of others along the same line.

We think it wholly unnecessary to take up and discuss any of appellant's bills of exceptions and requested charges separately. What we have said as to the law of the case, and the application thereof to the uncontroverted facts, disposes of all of them, against appellant. His contention and all of his points hinged around the same to the effect that, under the law as it now is, appellant was not required to get a verification license and record it in order to entitle him to practice medicine, which he had been doing all these years. Unfortunately for him, it seems, the law is against him, and none of his contentions can be sustained. He may think that the law should not embrace him and that it is a hardship upon him that it does. Yet, we are bound by the law as well as he, and we can not exempt him as we otherwise might want to do. The said law has been held constitutional by the United States Supreme Court and many times by this court. The Legislature had the power and authority to enact it. Its wisdom was for the Legislature and not for the courts. It, therefore, becomes our duty to affirm the case, which is accordingly ordered.

*Affirmed.*

ON REHEARING.

March 29, 1916.

PRENDERGAST, PRESIDING JUDGE.—Appellant claims that article 757, Penal Code, was not a part of the Act of 1907, and not a law in whole or in part from the passage of said Act until it was placed in the revision of 1911, and contends that ever since then it has been lawful for any physician of any of the classes mentioned therein to practice without any verification, or other, license, and as he is embraced within said exemptions, that article 752 is, therefore, inapplicable to him, and he can legally practice without any license and the record thereof. His whole defense was based on that idea. If his contention had been correct, this case should necessarily be reversed, because he offered, and the court excluded, his, and other, testimony, as shown in the original opinion, which would have brought him within the exemptions of article 757.

In view of his urgent insistence, we will further discuss the question. To do so, it will be proper to mention briefly but generally the legislation on the subject, and the reasons therefor.

To protect the lives, and preserve the health, of the people, is one of the chief objects and duties of government. In order to help do this our Legislature, since the establishment of our State government, has all along, and from time to time, enacted laws to prevent the incompetent person, the fakir and the fraud, from deceiving the sick and afflicted under their false claim to "cure all" and from fleecing

them of their money, and at the same time fully provide for the proper license of those who prepare themselves by a thorough study and knowledge of the human body, and the diseases and ailments to which it is subject, and thus prepare themselves to properly administer to, and treat, the sufferer. One of the best methods theretofore devised to accomplish this, and let all the people know who were competent and authorized, was to require, as a prerequisite to practice, a proper authority duly recorded in the district clerk's office of the county of the residence of the practitioner, which any and everyone could see for himself, and that method still prevails. At an early day, a diploma from a reputable medical college, duly so recorded, was required, and perhaps was all that was then required. It was not long till the fakir and fraud took advantage of this, and procured and recorded diplomas from medical colleges, which sold diplomas outright to any and everyone who paid the price, and without any previous study or preparation. Also, it developed that many young men, for lack of means, or other reasons, were unable to attend colleges, and procure a diploma, but who studied at home and under the instruction and assistance of local physicians fully prepared themselves to practice as well as those who attended colleges and procured a diploma. For all such the Legislature provided medical examining boards, where such young men could stand examinations, and procure license to practice without any diploma. In the course of time another class had grown up, which consisted of those worthy and competent practitioners, who without license or diploma, by many years of study and practice, had demonstrated their competency to practice. All three of these classes were duly provided for and protected by the various enactments of the Legislature, from time to time, but some or all persons in these classes were required to do certain things in order to evidence, or establish, the fact of their being embraced within one or the other of these exemptions. It is unnecessary to cite these various Acts of the Legislature.

As stated in the original opinion, the said Act of 1907 repealed all previous legislation on the subject, and by that Act regulated the whole matter.

Section 4 of that Act is: ("From and after the passage of this Act) it shall be unlawful for anyone to practice medicine in any of its branches upon human beings within the limits of this State who has not registered in the district clerk's office of the county in which he resides his authority for so practicing, as herein prescribed, together with his age, postoffice address, place of birth, school of practice to which he professes to belong, subscribed and verified by oath, which, if wilfully false, shall subject the applicant to conviction and punishment for false swearing as provided by law. The fact of such oath and record shall be indorsed by the district clerk upon the certificate. The holder of the certificate must have the same recorded upon each change of residence to another county, and the absence of such record shall be prima facie evidence of the want of possession of such cer-

tificate." In said revision that section is made article 750, Penal Code,. literally, except the words, "From and after the passage of this Act," are omitted, and is preceded by these words: "Authority to practice registered in district clerk's office; change of residence recorded, where."

Section 6 of that Act is: ("Within one year after the passage of this Act) all legal practitioners of medicine in this State, who, practicing under the provisions of previous laws, or under diplomas of a reputable and legal college of medicine, have not already received license from a State Medical Examining Board of this State, shall present to the Board of Medical Examiners for the State of Texas documents, or legally certified transcripts of documents, sufficient to establish the existence and validity of such diplomas or of the valid and existing license heretofore issued by previous examining boards of this State, or exemption existing under any law, and shall receive from said board verification license, which shall be recorded in the district clerk's office in the county in which the licentiates may reside. Such verification license shall be issued for a fee of fifty cents to all practitioners who have not already received a license from the State Board of Medical Examiners of this State. It is especially provided that those whose claims to State licenses rest upon diplomas from medical colleges recorded from January 1, 1891, to July 9, 1901, shall present to the State Board of Medical Examiners satisfactory evidence that their diplomas were issued from bona fide medical colleges of reputable standing, which shall be decided by the Board of Medical Examiners before they are entitled to a certificate from said board. This board may, at its discretion, arrange for reciprocity in license with the authorities of other States and Territories having requirements equal to those established by this Act. License may be granted applicants for license under such reciprocity on payment of twenty dollars." In the revision, that section is made article 752 literally, except the omission of these words: "Within one year after the passage of this Act," and is preceded by these words: "Practitioner of medicine to receive verification license."

Section 15 of that Act is: "All certificates heretofore issued by any board of medical examiners in this State under any former law shall be and continue in full force and effect for one year after this Act shall take effect, but not afterward, and any person who may, when this Act shall take effect, be practicing medicine within this State under the provisions of existing laws or under any exception contained therein, but without license, may, for one year thereafter, but not longer, continue in such practice, without license; and all such certificates and all such rights to practice medicine shall be in all respects subject to the provisions of this Act as though issued or acquired under its provisions." In the revision, in place of that section, is article 757, reading: "The provisions of this chapter shall not apply to any person who has been regularly engaged in the general practice of medicine, in any of its branches or departments, in this State, for five consecutive years prior to January 1, 1875; nor to any person who may have legally

qualified himself to practice medicine under the provisions of an Act entitled, 'An Act to regulate the practice of medicine,' passed May 16, 1873; nor to all those who were practicing medicine in Texas prior to January 1, 1885; nor to all those who began the practice of medicine in this State after the above date, who have complied with the laws of this State, regulating the practice of medicine, in force." While the language of the two are not the same, fully the same exemptions are embraced in each. If appellant's contention should prevail, then article 752 would be a dead letter as to all those embraced in article 757, and the door to those unlicensed practitioners thrown wide open. No such intention by the Legislature can reasonably be drawn from said articles, nor the whole Act, nor the law as now contained in the revisions only.

Said articles must be construed together so that both shall stand, if that can be, and they must be considered in connection with the previous legislation, and the whole law now on the statute books. We think it clear, not only from all previous legislation, but also from said Act of 1907, and even the codes as now revised only, that no one can legally practice medicine, or the healing art or science, on human beings, by any system or method, with or without administering medicines and charge therefor, without first procuring a license to do so and recording it in the district clerk's office of his residence. And that this was the clear intent of the Legislature. It is seen that by said section 15 all the old physicians were there given a year, but no longer, to get the new verification license from the board created by it, without standing any examination. However, by placing said article 757 in the revision instead of said section 15, it was intended and only intended, they should still not be cut off entirely as section 15 provided, but given another opportunity to get a verification license by complying with said article 752, and they still have that opportunity. Appellant not having availed himself of the opportunity within the year after the Act of 1907 went into effect, and still not doing so after the law was re-enacted in the revision giving him still the opportunity, but practicing contrary to and in the face of the law, must suffer the consequences of his own acts.

Appellant now, for the first time, complains of what he claims are some informalities in the judgment. But we think the judgment sufficiently complies with the statute and the decisions. (Arts. 866-7-8, C. C. P.; Terry v. State, 30 Texas Crim. App., 408; Ex parte Dickerson, 30 Texas Crim. App., 448.)

The motion for rehearing is overruled.

*Overruled.*