**Ex parte James Alvin HOPSON.**

**No. 69310.**

Court of Criminal Appeals of Texas, En Banc.

April 17, 1985.

John D. Reeves, Huntsville, for appellant.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION

McCORMICK, Judge.

This is a post conviction application for writ of habeas corpus. Article 11.07, V.A. C.C.P. Applicant alleges that he agreed to enter a plea of guilty to the offense of escape, enhanced by one prior conviction, on the condition that he would be assessed a life sentence but there would be *no* affirmative finding of the use of a deadly weapon during the commission of the offense and he would thus be entitled to good time credit in the determination of his eligibility for parole. Article 42.12, Section 3f(a)(2) and Section 15(b), V.A.C.C.P.

The record before us shows that applicant was indicted in pertinent part as follows:

"... did then and there after being arrested for and convicted of an offense, to-wit: Murder, a felony, did intentionally and knowingly escape from the custody of Lester Gunn, to-wit: Sheriff of Bell County, Texas and the said James Alvin Hopson did then and there to effect his escape intentionally and knowingly threaten to use and used a deadly weapon, to-wit: a razor and a razor blade...."

Thereafter followed one enhancement paragraph.

V.T.C.A., Penal Code, Section 38.07, provides as follows:

"(a) A person arrested for, charged with, or convicted of an offense commits an offense if he escapes from custody.

"(b) Except as provided in Subsections (c) and (d) of this section, an offense under this section is a Class A misdemeanor.

"(c) An offense under this section is a felony of the third degree if the actor:

"(1) is under arrest for, charged with, or convicted of a felony; or

"(2) is confined in a penal institution.

"(d) An offense under this section is a felony of the second degree if the actor used or threatened to use a deadly weapon to effect his escape."

As can be seen, the fact that applicant was charged with escape after being convicted of murder raised the offense from a Class A misdemeanor to a third-degree felony. Section 38.07(c)(1), supra. This alone, enhanced by one prior conviction, mandated that applicant be punished for a second-degree felony, that is, 2 to 20 years, and a fine not to exceed $10,000. V.T.C.A., Penal Code, Section 12.42(a) and Section 12.33.

Moreover, in the instant case, applicant was also alleged to have used a deadly weapon to effect his escape. This additional allegation raised the offense from a

third-degree felony to a second-degree felony. Section 38.07(d), supra. Adding to that the paragraph alleging the enhancement for one prior conviction, we see that applicant's potential punishment was raised to the range of a first-degree felony, this is, 5 to 99 years or life, and a fine not to exceed $10,000. V.T.C.A., Penal Code, Section 12.42(b), Section 12.32.

Applicant argues in his application that according to the terms of his plea bargain he agreed to plead only to the lesser included offense of escape, enhanced by a prior conviction. In return, he would receive a life sentence.

Our reading of the circumstances surrounding the taking of the plea, however, does not support that argument. And indeed, had the terms of the plea bargain agreement been such, the agreement would be void since the greatest punishment available for an enhanced third degree felony would be twenty years and a $10,000 fine. Sections 12.42(a) and 12.33, supra.

The record shows that at the plea hearing the prosecutor announced ready for the offense of escape with a deadly weapon, enhanced to a first-degree felony. The following occurred when the court asked applicant to enter a plea:

"[The Court]: But I have been presented here with copies of the plea bargain agreement as disclosed....

Now in Cause Number 29,355 it's alleged that on the 30th of October, 1980 in Bell County, Texas, you then and there, after having been arrested and convicted of an offense, to-wit: murder, a felony, intentionally and knowingly escaped from custody of the sheriff, Lester Gunn, and that you did then and there, to effect your escape, intentionally and knowingly threaten to use and you did use a razor—a razorblade.

Now, to that charge, how do you plead, guilty or not guilty?

"A. Guilty.

\* \* \* \* \* \*

"Q. Now you understand with the pleas[1] that you have entered here, there is a mandatory punishment with the plead—with the enhancement, there is a mandatory punishment in each case of life.

Do you understand that?

"A. Yes, sir.

"Q. And do you understand the plea bargain to be that these are going to run concurrently?

"A. Yes, sir.

"Q. These sentences; is that right?

"Mr. Leitner [the prosecutor]: That's right. But there is not a mandatory punishment of life.

"The Court: It's a first degree felony.

"Mr. Leitner: It's a first degree and is supposed to be five to life, and a $10,-000 fine, up to $10,000.00 fine.

"Q. It's mandatory first degree punishment, five to life, and a $10,000.00 fine may be imposed in addition.

But do you understand that the plea bargain is going to be that you receive life in each case?

"A. Yes, sir.

\* \* \* \* \* \*

"Q. And have you discussed also with Mr. Holbrook [Defense Counsel] and has he explained to you that the court, in return for your plea, is not going to make an affirmative finding that there was a deadly weapon used in either one of these cases?

"A. Yes, sir.

"Q. So that you may be given the benefit of that ommission (sic) in crediting your time served in the penitentiary; do you understand that?

"A. Yes, sir.

"Q. Now, and knowing all that, do you still insist on your pleas of guilty and true as made, for the record?

---

1. Applicant was also pleading to a robbery case at the same time he entered a plea in the instant case.

"A. Yes sir."

Thereafter, the court examined applicant's judicial confession and then assessed life in each cause. Our review of applicant's judicial confession shows that he confessed to using a deadly weapon, to-wit: a razor and razor blade, in effecting his escape. Furthermore, the record contains a pleading denominated "Disclosure of Plea Bargain Agreement." This document reflects that applicant was to plead guilty to "Escape a 2nd Degree Felony Enhanced to a 1st Degree" in exchange for a life sentence. Thus, it is clear that applicant was not pleading to third-degree escape, but was knowingly and voluntarily pleading guilty to the offense of second-degree escape,[2] that is, escape with a deadly weapon.

We turn now to the judgment and sentence entered in this cause. Both reflect that applicant was found guilty of the offense of "escape with a deadly weapon (enhanced)." We agree with applicant that this wording in the judgment amounts to an affirmative finding of a deadly weapon and thus violates the terms of the plea bargain entered into by the parties.

In *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), the Supreme Court wrote that where a plea bargain agreement is entered into, it must be enforced either by specific performance or else the defendant must be allowed to withdraw his plea. Examining the current case law in this particular area, we feel that the proper remedy in the instant case is specific performance, that is, deleting the affirmative finding of a deadly weapon from the judgment and sentence, for when such a finding is included in the judgment, good conduct time served is not considered when computing the prisoner's parole eligibility. *Carrillo v. State*, 634 S.W.2d 21 (Tex.App.—El Paso, 1982, no p.d.r.). Therefore, we now order that the judgment and sentence be reformed in the instant case to reflect that applicant was found guilty of the offense of "escape, a 2nd degree felony (enhanced)." See, *Ex parte Nino*, 659 S.W.2d 437 (Tex.Cr.App.1983). Such reformation effectively deletes any affirmative finding of a deadly weapon and this satisfies *all* the terms of applicant's plea bargain. *Turner v. State*, 664 S.W.2d 86, 90 (Tex.Cr.App.1983). Compare: *Delgado v. State*, 677 S.W.2d 776 (Tex.App.— San Antonio 1984) (guilty plea case where although indictment alleged defendant committed murder by shooting with a gun, judgment contained no affirmative finding of a deadly weapon nor did it reflect that the deadly weapon used was a firearm, and thus defendant was not ineligible for probation).

It is so ordered.

CLINTON, Judge, concurring.

During the course of determining whether the plea of guilty by applicant was made freely, voluntarily and intelligently, the trial judge inquired of him:

"Q. And have you discussed also with [your attorney] Mr. Holbrook and has he explained to you that *the court, in return for your plea, is not going to find that there was a deadly weapon used* in either one of these cases?"[1]

A. Yes, sir.

Q. So that you will be given *the benefit of that ommission [sic] in crediting your time served in the penitentiary;* do you understand that?

A. Yes, sir."

Nevertheless, as the opinion of the Court points out, the judgment does describe the offense as "escape with a deadly weapon (enhanced)," seeming contrary to assurances by the judge that such an "affirmative finding" would not be made. Now, this Court proposes to remedy the situation by deleting what it says is an affirmative finding.

In all of that I am concerned over whether the Judicial Department may be unwit-

---

2. Both the judicial confession and the "Disclosure of Plea Bargain Agreement" were signed, dated and filed on January 23, 1981, the same date applicant's plea was entered.

1. All emphasis is mine unless otherwise indicated.

tingly thwarting the will and determination of the Legislative Department in enacting § 15(b) of Article 41.12, V.A.C.C.P.

In my judgment it is incumbent on this Court to notice and address the practice now being routinely followed in the trial courts of this State in respect to plea bargaining and negotiated pleas in certain kinds of criminal actions—when all participants well know the prosecution can, and usually does, prove the accused did indeed use or exhibit a deadly weapon during the commission of a felony offense or during immediate flight therefrom, within the meaning of Article 42.12, § 3f.(a)(2), V.A.C.C.P., but still undertake to prevent the consequences prescribed by *id.*, § 15(b). This being just such a case, I now turn to deal with the principle implicated by that practice.

"The Legislative power of this State shall be vested in ... 'The Legislature of the State of Texas.' " Article III, § 1, Constitution of the State of Texas. The Court has held that this section delegates to the Legislature lawmaking power and authority including the right to define offenses and prescribe penalties therefor. *McNew v. State*, 608 S.W.2d 166, 176 (Tex.Cr.App. 1980); see State ex rel. *Smith v. Blackwell*, Judge, 500 S.W.2d 97, 104 (Tex.Cr. App.1973). And it is axiomatic that the Judicial Department has no concern with the policy underlying or wisdom of a legislative enactment, for such belongs exclusively to the Legislative Department. *Harwell v. State*, 147 Tex.Cr.R. 505, 182 S.W.2d 713, 714 (1944); *Gay v. State*, 79 Tex.Cr.R. 305, 184 S.W. 200, 202 (1916); *Ex parte Francis*, 72 Tex.Cr.R. 304, 165 S.W. 147, 154 (1914); see also a host of decisions annotated at notes 16 and 17 under *id.*, § 1.

Indeed, the maxim is that, having ascertained legislative intent and valid meaning of statutory provisions, courts have a duty to take the law as they find it and then follow it.

On the other hand, district and county attorneys are constitutional officers charged with representing The State of Texas in all cases in the district court and "inferior courts"—in certain situations, however, subject to regulation of their respective duties by the Legislature. Article V, § 21, Constitution of the State of Texas. Their basic duties have been assigned by the Legislature in Articles 2.01 and 2.02, V.A.C.C.P. See generally *Garcia v. Laughlin*, 155 Tex. 261, 285 S.W.2d 191 (1955)[2] and *Shepperd v. Alaniz*, 303 S.W.2d 846 (Tex.Civ.App.—San Antonio 1957), no writ history.[3] As the Interpretive Commentary following § 21 correctly points out, the "overwhelming importance" of those officers flows from their inherent discretionary power to determine "whether prosecution in any given case shall be inaugurated, or, if inaugurated, pushed to a successful conclusion"—the measure of the latter being also determined initially by the prosecuting attorney. (However, since their "primary duty [is] not to convict, but to see that justice is done," Article 2.01, V.A.C.C.P., respective electoral constituencies of each is the ultimate arbiter of whether prosecutions are "successful.")

One manner of prosecuting a criminal action to a successful conclusion contemplated by the Legislature is through a plea bargain agreement followed and implemented by the trial court. See Articles 26.13 and 44.02, V.A.C.C.P. "The disposition of criminal charges by agreement between the prosecutor and the accused,

---

**2.** "[T]he district attorney shall represent the State in the prosecution of all criminal cases in the district court of his district except where he is disqualified. When the district attorney is disqualified the county attorney is given the right to represent the State. Also the county attorney is required to represent the State in all criminal cases in courts other than the district courts, and to appear in district courts as representing the State when the district attorney is absent from district court, and, further, the

county attorney may assist the district attorney in cases in the district court." *Id.*, 285 S.W.2d at 195.

**3.** "It has always been the principal duty of the district and county attorneys to investigate and prosecute the violation of all criminal laws ... and these duties cannot be taken away from them by the Legislature and given to others." *Id.*, at 850.

sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice." *Santabello v. New York,* 404 U.S. 257, 260, 92 S.Ct. 495, 498, 30 L.Ed.2d 427 (1971); see *Brady v. United States,* 397 U.S. 742, 751–752, 90 S.Ct. 1463, 1470–1471, 25 L.Ed.2d 162 (1970). "There is, of course, no absolute right to have a guilty plea accepted [and a] court may reject a plea in exercise of sound judicial discretion." *Santabello,* supra, 404 U.S. at 262, 92 S.Ct. at 498. However, once agreed to by the parties and accepted by the court, the bargain must be specifically performed or the accused will be given an opportunity to withdraw the plea. *Santabello,* 404 U.S. at 263, 92 S.Ct. at 499.

In the instant case there is such a plea bargain; though perhaps "it is shown that the [appellant] used ... a deadly weapon," § 3f(a)(2), supra, part of the bargain was that the trial judge would *not* make an affirmative finding to that effect and enter it in the judgment, *ibid.* The notion has been expressed, however, that the trial court was "obligated as a matter of law to make a finding that applicant used a deadly weapon in the course of committing the offense of escape," and there is support for that proposition in, e.g., *Delgado v. State,* 677 S.W.2d 776 (Tex.App.—San Antonio 1984), no PDR history (Cadena, C.J., dissenting).[4]

Both the *Delgado* majority and the dissent examined an opinion by a panel of this Court in *Jones v. State,* 596 S.W.2d 910 (Tex.Cr.App.1980), each coming to a different conclusion about its meaning and impact. Section 3f(a)(2) came under scrutiny in the *Jones* case when it was contended that the trial court erred in failing to make a full admonishment as to consequences of his guilty plea in that although he was applying for probation the judge did not warn him that he was not eligible on account of having used a deadly weapon in committing the felony offense of murder then on trial. The panel rejected the contention, reasoning that "this provision is only applicable when the trial court makes an *affirmative finding* and *enters* such finding in the judgment of conviction," [5] and since the record did not reflect any such finding there was no showing that Jones was "ineligible for probation." The *Delgado* majority followed that reasoning, whereas Chief Justice Cadena believed the *Jones* panel assumed that the judgment did not contain an affirmative finding because its attention had not been directed to "the rules concerning the findings required to be made following a plea of guilty or to the rules for construction of judgments," and he opined that under such rules "the trial court in finding defendant guilty, was required to find that the murder was accomplished by use of a deadly weapon, since in the absence of such a finding the adjudication of guilt would have been impossible." *Delgado,* supra, at 779.[6]

Although a showing that the defendant used or exhibited a "deadly weapon" seems to trigger the remaining provisions of § 3f(a)(2), implicit in the reasoning employed by the *Jones* panel is that making an affirmative finding of that fact and entering it in the judgment of conviction are discretionary rather than mandatory acts on the part of the trial judge, so that when such acts are not done an otherwise eligible accused retains his eligibility for probation from the court notwithstanding the fact that he did indeed use or exhibit a deadly weapon. With deference, extending that reasoning leads to the conclusion that by the simple expedient of not making and entering an affirmative finding a trial judge could remove the bar against the

---

**4.** "Since, in order to find appellant guilty of murder 'as charged in the indictment,' the trial court had to find that a deadly weapon was used, it was under a *mandatory duty* to enter such finding in its judgment. Its failure to do so violated the clear statutory mandate ..." *Id.,* at 780.

**5.** Emphasis is added in the panel opinion.

**6.** My own view is that the finding alluded to by Chief Justice Cadena is at best an "inferred finding" from allegations in the charging instrument, the evidence and a finding of guilt; it is not an "affirmative finding" within the meaning of § 3f(a)(2) and (b).

court's granting probation to any accused similarly situated.

What *Jones* overlooked is that under § 3f(a)(2) and (b) it is not so much a matter of eligibility of the accused as it is authority of trial court or jury to grant probation to a defendant "when it is shown that defendant used or exhibited a deadly weapon." *Rivas v. State,* 627 S.W.2d 494 (Tex. App.—San Antonio 1981), PDR refused, opined that neither judge nor jury is authorized to grant probation in those circumstances; *May v. State,* 660 S.W.2d 888 (Tex.App.—Austin 1983), disagreed with *Rivas* and correctly held that while the *trial judge* alone is "expressly forbidden to do so," *when the jury recommends probation* the court is required by § 3a to grant probation and is authorized by § 3f(b) to order a defendant found guilty of a felony of the second degree or higher to be confined in the Texas Department of Corrections for not more than 120 days. In *May v. State,* (Tex.Cr.App., No. 113–84, delivered December 5, 1984), this Court found with the Austin Court of Appeals that "the *Rivas* rationale is erroneous," and affirmed the judgment. See also *Ex parte Thomas,* 638 S.W.2d 905, 907–908 (Tex.Cr.App.1982).

Accordingly, the results are that a trial court alone may not grant probation to an accused who is otherwise eligible for probation yet is shown to have used or exhibited a deadly weapon, but upon a recommendation by the jury a court is required to place the defendant on probation and in certain cases may impose a period of confinement to be served at the outset.

While the Court does not deal with a matter of probation in the instant case, in that context the lesson taught by the Legislature is that an accused shown to have used or exhibited a deadly weapon in committing or fleeing from commission of a felony offense may not avoid suffering the consequences confined in the Texas Department of Corrections—unless a jury makes such affirmative finding, and notwithstanding its own finding, recommends probation be granted. But should the jury refuse to recommend probation, the trial court still

"*shall* enter the finding in the judgment of the court," and consequences are those provided by law, including constraints in § 15(b), V.A.C.C.P.

In a trial before the court when it is shown that defendant used or exhibited a deadly weapon in circumstances prescribed by § 3f(a)(2), the question yet remaining is whether the trial judge must make an affirmative finding to that effect and enter that finding in the judgment of the court.

Given a clear legislative intent and purpose in enacting § 3f(a) and (b), and its affirmatively providing that only upon recommendation of a jury may a defendant shown and found to have used or exhibited a deadly weapon be placed on probation in lieu of confinement, that a plea bargain agreement will justify a trial judge in circumventing the certainty of extended confinement is not supported by any previously espoused rationale other than in an exercise of discretion, as in *Jones,* supra. And if Chief Justice Cadena in *Delgado,* supra, accurately perceived the shortcomings in *Jones* and correctly concluded the trial court had to find that a deadly weapon was used and perforce had "a mandatory duty to enter such finding in its judgment," a refusal to do so surely constitutes an abuse of discretion.

Thus we are brought back to the matter of prosecutorial discretion inherently vested in district and county attorneys representing the State in a criminal action. See *ante.* In the premises being considered the tension between that power constitutionally granted the Legislature to prescribe penalties for defined penal offenses and that inherent power to exercise prosecutorial discretion becomes at once apparent and stressful. The problem is how to resolve, or at least ease, the tension.

Nolle prosequi in a criminal action is a declaration of record by a prosecuting attorney that he will "no further prosecute" the case either in whole or in part as to some counts or some defendants. Black's Law Dictionary (Rev. Fourth Ed.). At common law the prosecuting attorney alone had the power to enter a nolle prosequi, but

in Texas the Legislature saw fit to change the common law rule to the extent leave of the trial court is required upon reasons given and stated in the judgment. *Wallace v. State*, 145 Tex.Cr.R. 625, 170 S.W.2d 762, 764 (1943).

The legislatively crafted rule is now embodied in Article 32.02, V.A.C.C.P., *viz:*

"The attorney representing the State may, by permission of the court, dismiss a criminal action at any time upon filing a written statement with the papers in the case setting out his reasons for such dismissal, which shall be incorporated in the judgment of dismissal. No case shall be dismissed without the consent of the presiding judge."

Under the authority of that statute the Court has held the State may obtain dismissal of a higher offense and try an accused for any lesser included offense embraced within a charging instrument. *Clay v. State*, 70 Tex.Cr.R. 451, 157 S.W. 164 (1913); *Gentry v. State*, 68 Tex.Cr.R. 567, 152 S.W. 635, 636 (1913). Since it has long been held that part of the statute providing for a written statement is "merely directory not mandatory, and an oral motion . . . is sufficient," *Wallace v. State*, supra, 170 S.W.2d at 764, with approval of the trial court verbal dismissal of allegations in aggravation or of a higher grade of offense is a commonly accepted practice, and it has been found that a prosecuting attorney may elect or abandon, and thereby dismiss, one of two paragraphs of a count—with permission of the trial court. *Foster v. State*, 661 S.W.2d 205, 208 (Tex.App.—Houston [1st] 1983), PDR refused.

Presumed to be fully cognizant of the common law and related findings and holdings of the Court with respect to nolle prosequi, by enacting its predecessor and reenacting Article 32.02, the Legislature has given its approval and sanction to exercise of prosecutorial discretion in every criminal action, subject to approval of the trial court in a given case, well aware that punishment actually assessed may be less than, and related consequences other than, that which was initially contemplated by the charging instrument.

The offense of escape is a felony of the second degree if the accused "used or threatened to use a deadly weapon to effect his escape"—"exhibited a deadly weapon" is *not* a prescribed element. In the case at bar the indictment alleged that appellant did "threaten to use and used a deadly weapon . . ." That one "threatened to use" does not necessarily mean that one "used or exhibited" within the meaning of § 3f(a)(2). Thus, what the judgment and sentence and the majority opinion denominate "escape with a deadly weapon (enhanced)" is ambiguously broad enough to include "threatened to use a deadly weapon." Since the prosecutor's entering into the plea bargaining agreement effectively elected "threatened to use" and abandoned "used," and the judge of the trial court approved the agreement, the latter allegation in the indictment was thereby dismissed. In these circumstances the trial court was not required to make an affirmative finding that appellant "used" a deadly weapon nor enter such finding in the judgment of the court, and the judgment and sentence does not necessarily mean the trial court did.

Therefore, what was done in the instant criminal action does not thwart or offend the will and determination of the Legislature in enacting § 3f(a)(2). However, since the description of the offense of which applicant was adjudged to be guilty may be read to mean that he "used" a deadly weapon, I agree that the judgment and sentence should be reformed to describe the offense as "escape, a 2nd degree felony (enhanced)."

Accordingly, I join the judgment and order of the Court.

TEAGUE, Judge, dissenting.

Because I am unable to agree with the majority that the record of appeal clearly reflects that applicant "was not pleading to third-degree escape, but was knowingly and voluntarily pleading guilty to the offense of second-degree escape, that is,

escape with a deadly weapon," I am compelled to dissent. I would vote to set aside the conviction James Alvin Hopson, applicant, attacks and would remand the cause to the convicting court so that Hopson can replead to the indictment in that cause—because of the way the trial judge read the indictment to him and to what he actually pled guilty to committing. This appears to be a case of first impression.

The conviction that applicant attacks in this cause appears to be what many prosecutors, defense attorneys, and trial judges would call a "wash out case," as it appears to represent nothing more and nothing less than an effort by all to get the case removed from the trial court's docket in a manner satisfactory to all concerned. See *post.* The question before us, however, is not whether it was improper to quickly dispose of the case, but, instead, is whether the manner in which the case was disposed of by the trial judge was done in accordance with the law. I am unable to agree that the trial judge correctly and legally disposed of this case.

At the present time, applicant is serving a forty (40) year sentence for a murder conviction, life imprisonment for a robbery conviction, enhanced with one prior felony conviction, and another life imprisonment for an escape conviction, which is the conviction that applicant attacks in this cause. The sentences are running concurrently.

The record reflects that applicant and his attorney entered into a plea bargain with the prosecuting attorney to dispose of, inter alia, the cause that is before us. Applicant was charged by indictment with the offense of escape with a deadly weapon, which is by law a second degree felony. See V.T.C.A., Penal Code, Section 38.07. A prior felony conviction was alleged in the indictment for enhancement of punishment purposes. These allegations made the possible punishment the same as that provided for a first degree felony, which carries a maximum punishment of life imprisonment and a $10,000 fine. See V.T.C.A., Penal Code, Section 12.32.

The plea bargain agreement, which applicant approved, was that he would plead guilty to the primary offense and "true" to the enhancement paragraph. In return, the trial judge would not make an affirmative finding that a deadly weapon had been used when applicant committed the offense of escape, applicant's punishment would be assessed at life imprisonment, and no fine would be assessed. The trial judge approved the plea bargain agreement and assessed punishment at life imprisonment in the penitentiary.

At this juncture, one might ask, "What's legally wrong with applicant's conviction?"

First off, the trial judge, contrary to the plea bargain agreement, after he found applicant guilty, entered in the judgment of conviction a finding that applicant had been found "guilty of the offense of ESCAPE WITH A DEADLY WEAPON (ENHANCED)." Under our law, see Art. 42.-12, Section 15B, V.A.C.C.P., this finding would have a grave effect upon when applicant could become eligible for parole on this conviction. This finding also caused a breach of the plea bargain agreement.

The trial judge, upon learning or discovering that his finding was contrary to the plea bargain agreement, which he had approved, attempted to make things right by entering a judgment nunc pro tunc, which new judgment reflected that applicant had been found guilty of "ESCAPE, A LESSER OFFENSE THAN THE INDICTMENT (ENHANCED)."

However, the trial judge soon learned that the judgment nunc pro tunc would not make things legally right. He soon rescinded that judgment, and reinstated the original judgment of conviction.

It appears that the problem that is before this Court lies in the fact that under the escape statute, see Section 38.07, supra, where a deadly weapon is *not* alleged in the charging instrument, the maximum possible punishment for that offense is that as provided for a third degree felony, which, if enhanced with one prior felony conviction, raises the punishment from that provided for a third degree felony, which

carries a maximum punishment of ten (10) years' confinement in the penitentiary and a maximum fine of $5,000, see V.T.C.A., Penal Code, Section 12.34, to that provided for a second degree felony, which carries a maximum punishment of twenty (20) years' confinement in the penitentiary and a fine of $10,000. See V.T.C.A., Penal Code, Section 12.33. But, everyone agreed that applicant would receive a life sentence, and that there would not be a finding of a deadly weapon, didn't they?

Well, it seems that life imprisonment for the offense of escape is only possible when the State alleges and proves that a deadly weapon was used or threatened to be used during the commission of the escape and the State also alleges and proves that in the past the defendant had sustained at least one prior felony conviction.

In this instance, without motion from the prosecuting attorney, see Chapter 32, V.A.C.C.P., but as reflected on page 547 of the majority opinion, when the trial judge read the indictment to the applicant, which Art. 26.11, V.A.C.C.P., requires must be done, he omitted from the indictment the allegation that the instrument that was used in the commission of the escape was "a deadly weapon." In *Essary v. State*, 53 Tex. Cr.R. 596, 11 S.W. 927, 930–931 (Tex.Cr. App.1908), this Court stated, inter alia, that "one of the purposes of the requirement that [the indictment] shall be read to the jury is to inform them in precise terms of the particular charge laid against the defendant on trial." Is this not applicable where the indictment is read to a defendant?

Therefore, we must ask, what effect, if any, did the trial judge's omitting from the indictment the allegation "a deadly weapon" have on applicant's conviction?

It is or should be undisputed that applicant's plea of guilty did not go to all of the elements that are contained in his indictment. The record clearly reflects that when the trial judge read from the indictment he omitted from the indictment the words "a deadly weapon." See page 547 of the majority opinion.

Notwithstanding that it was applicant's intention to plead guilty to the indictment as it was drawn, I believe that when the trial judge omitted from the indictment the words "a deadly weapon" he effectively reduced the accusation against the applicant to the lesser offense of escape. In fact, the trial judge asked the applicant at the conclusion of the plea proceeding, "Q: Now, and knowing all that, do you still insist on your pleas of guilty and true *as made*, for the record? A: Yes, sir." (Emphasis Added). However, the law provides that before the charged offense might be reduced to a lesser offense, it must be done upon motion of the prosecuting attorney. See Chapter 32, V.A.C.C.P.

The majority, however, without citation of authority, says that as applicant knew what he intended to plead guilty to, the fact that he pled guilty to a different and another offense makes no difference. I must ask: Is this another form of harmless error that this Court has manufactured? Compare *Almanza v. State*, (Tex.Cr.App. 1985). If so, is this Court not duty bound to so inform the bench and bar of this State?

Because I am unable to agree with the majority that there is no legal difference between what a person intends to plead guilty to and what he actually pled guilty to, and because I further believe that what occurred caused applicant's plea of guilty not to have been done knowingly, which in turn renders his plea involuntary, I must respectfully dissent. I would vote to set aside the conviction and remand the cause back to Bell County so that applicant can replead to the indictment in this cause.